[S. F. No. 16548.   In Bank.—April 18, 1941.]

CLARENCE G. FRY, Respondent, v. BOARD OF EDUCATION OF CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

WALLACE B. BEEBE, Respondent, v. BOARD OF EDUCATION OF CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

John J. O'Toole, City Attorney, Walter A. Dold, Chief Deputy City Attorney, and Irving G. Breyer for Appellants.

Daniel R. Shoemaker for Respondent.

THE COURT.—A petition for hearing in this case was granted to the end that further consideration be given to the contentions of the appellants. On such consideration, we agree with the disposition of the appeal by the District Court of Appeal of the First Appellate District, Division One, and adopt as the opinion of this court the opinion of that court prepared by Presiding Justice Peters. It is as follows:

"The defendants, the Board of Education and its members, and the Superintendent of Schools of the City and

County of San Francisco, appeal from judgments of the trial court in two *mandamus* proceedings ordering defendants to classify and rate the two plaintiffs, both high school teachers, at a rating and salary in excess of that granted them by defendants, and awarding both plaintiffs back salary for a designated period at the higher rating. The two cases were tried together, and have been consolidated on appeal.

"The facts are not in dispute. Plaintiffs Fry and Beebe were appointed high school teachers in the San Francisco school department on November 3, 1931, and January 4, 1932, respectively, each being given at that time, in accordance with the then existing rules and regulations of the school department, an advanced rating predicated upon previous teaching experience outside the City and County of San Francisco. Not only were plaintiffs so appointed and rated, but, at that time, they were assigned to particularly designated schools. At the time of their appointment, at their request, they were granted leaves of absence to the end of that school year—June of 1932. The salary schedule then applicable to plaintiffs was one that had been duly adopted by the Board of Education, and which is still in effect. This salary schedule provides for an increase of salary dependent upon years of service. After the leaves of absence were granted, substitutes were appointed to teach in the place of plaintiffs for the balance of that school year.

"While plaintiffs were on their respective leaves of absence, but while they were in the employ of defendants, the Board, on February 16, 1932, adopted the following resolution:

" 'RESOLVED: That the Personnel Department be and is hereby advised that it is the policy of the Board of Education, at present, that in setting salary ratings for incoming teachers, no outside experience will be credited. (This regulation also applies to persons on existing eligible lists not appointed to positions in the San Francisco Public Schools to date.) '

"On February 24, 1932, the plaintiffs were informed by letter from the Assistant Director of Personnel of the school department, Mr. Irving W. Snow, that the resolution had been passed, and that it applied to them, and asking the plaintiffs whether they wanted an assignment on those terms. Both plaintiffs replied that they would accept employment

at the reduced salary, but expressed the hope there would be an adjustment.

"On May 4, 1932, both plaintiffs were notified in writing that, effective at the end of that school year, they were discharged from the school department, and they were notified that they would be placed on the eligible list. On August 9, 1933, effective on the 14th of that month, both plaintiffs were again appointed to positions in the school department without credit for their outside experience.

"At the time that plaintiffs were first appointed in 1931, four other teachers were also appointed and assigned to positions in the school department. These four teachers, like Fry and Beebe, had no teaching experience in San Francisco, but, like them, were given an advanced rating for outside teaching experience. Unlike Fry and Beebe these four teachers did not take leaves of absence but taught from the date of their respective appointments until June 30, 1932. These four teachers, just as were plaintiffs, were dismissed in May of 1932. They were likewise re-appointed at the same time as were plaintiffs. These four teachers, however, were not re-employed at a first year's salary rating as were plaintiffs, but were given an advanced rating predicated upon their outside experience. For all practical purposes the only difference between these four teachers and the plaintiffs is that they taught in San Francisco during the period the plaintiffs, although appointed and assigned, were on leaves of absence.

"After the appointment of these four teachers some question arose as to whether, under the resolution of February 16, 1932, they were entitled to the advanced rating predicated solely on outside experience. On August 29, 1934, the Board adopted a resolution interpreting its former resolution. This so-called 'interpretation' was adopted to determine whether these four teachers were legally entitled to advanced ratings. It stated that the resolution 'was not intended to cover, and did not refer to teachers who were already in the Department, and who had been given a rating as in the case of the teachers above mentioned; but applied to incoming teachers'.

"The trial court found, on competent evidence, that plaintiffs, ever since their respective re-appointments, continuously and by diligent means, have endeavored to be restored

to their original ratings and to be placed in the same classification as the four teachers above-mentioned.

"Based on these admitted facts, the trial court found that plaintiffs were entitled 'under the rules and regulations of respondents then in full force and effect', to be classified at the advanced rating. The court also concluded that the failure of defendants to so classify plaintiffs 'was arbitrary and unreasonable and that said conduct violated the rule of uniformity'.

"Based on these findings, the trial court ordered defendants to classify plaintiffs at the advanced ratings, and gave judgment for plaintiffs for back salary for a period of three years prior to the commencement of these proceedings.

"Defendants discuss at some length the question as to whether the Board could have legally classified the plaintiffs differently from the four teachers who actually taught in the San Francisco schools after their first appointment. That is not the real issue in these cases. The real issue is whether the Board did so classify the plaintiffs. In other words, the real issue is whether, under the rules and regulations of the Board, the plaintiffs were entitled to an advanced rating. The arbitrary action of the Board, as found by the trial court, did not consist in classifying plaintiffs in a different group from the other four teachers, but in interpreting their rules, regulations and resolutions so as to place plaintiffs in a different classification. It is our conclusion that the Board was not justified in refusing to grant to plaintiffs an advanced rating; that under the resolution of February 16, 1932, its interpretation of August 29, 1934, and the rules and regulations of the Board, plaintiffs were legally entitled to the advanced rating.

"It must be conceded that, within the limits fixed by the School Code, the Board has discretionary control over the salaries of teachers. (*Fidler* v. *Board of Trustees*, 112 Cal. App. 296 [296 Pac. 912]; *Abraham* v. *Sims*, 2 Cal. (2d) 698 [42 Pac. (2d) 1029].) ■ However, it must also be conceded that the legislature had enjoined on such Boards, within reasonable limits, the principle of uniformity of treatment as to salary for those performing like services with like experience. This same limitation exists in the rules and regulations of the appellant Board. This limitation, however, does not prevent the Board from making reasonable classifica-

tions. There can be no doubt that the Board may reasonably classify between teachers with teaching experience in San Francisco and those with teaching experience outside. ■ There can be no doubt that the resolution of February 16, 1932, was well within the power of the Board in so far as it provided that as to all incoming teachers no credit for outside experience should be granted. It might also be conceded that the Board could, by proper action, classify as between teachers employed, but on leave of absence, and teachers employed and actually teaching. It may be that the Board could have lawfully classified the four teachers who had actually taught in San Francisco prior to June of 1932, in one group, and could lawfully have placed the plaintiffs, who were similarly employed but who were on leaves of absence, in another group. But, as already pointed out, the point is that the Board did not do this. It is our opinion that, under this resolution, and the rules and regulations of the Board, both groups were placed in the same classification. Thereafter, by a purported interpretation of the resolution by the Assistant Director of Personnel, the Board, without changing its resolutions, sought to discriminate against plaintiffs, and arbitrarily refused to grant to plaintiffs the salary rating fixed for them by the rules and regulations.

■ ''The resolution of February 16, 1932, is not ambiguous on the basic question here involved. The resolution states that it is to apply only to 'incoming teachers', and that as to them, and as to them alone, 'no outside experience will be credited'. Then, apparently, so that no confusion would result, it was added in parenthesis that the regulation applies to persons on the eligible lists 'not appointed to positions in the San Francisco Public Schools to date'. Obviously, the plaintiffs were not 'incoming teachers', because at the time the resolution was passed they were in the employ of the Board. If they became 'incoming teachers' by virtue of their subsequent dismissal and their later re-employment, so did the four other teachers who were likewise subsequently dismissed and later re-employed. There is not one word in the resolution indicating that it was intended to apply to teachers who had been employed but were on leave of absence. To interpret the resolution as do defendants, is to write into the resolution something that is not there. That this interpretation of the resolution is the proper one, is strengthened, if not conclusively demonstrated, by three other factors:

██ "1. The explanatory clause added to the resolution states that the resolution not only applies to 'incoming teachers', but also 'to persons on existing eligible lists not appointed to positions in the San Francisco Public Schools to date'. In this case the record shows, and the trial court found, that not only had plaintiffs been appointed, but also that they had been assigned to particularly designated schools at the time the resolution was passed. The explanatory clause definitely eliminates plaintiffs from the operation of the resolution. ██ A teacher employed but on leave of absence is, nevertheless, an employee of the Board. (*Fairchild* v. *Board of Education,* 107 Cal. 92 [40 Pac. 26] ; *Kennedy* v. *Board of Education,* 82 Cal. 483 [22 Pac. 1042].) It has been held that in determining a teacher's seniority rights, the relation of employer and employee continues to exist although the teacher is on leave of absence, and that a teacher on leave of absence is within the terms of a resolution retaining 'the present staff of teachers'. (*Ryan* v. *Burk,* 25 Cal. App. (2d) 342 [77 Pac. (2d) 224].)

"2. After the resolution had been passed, and after plaintiffs and the other four teachers had been re-employed, the Board, on August 29, 1934, attempted to 'interpret' the resolution. At that time the Board approved the interpretation of the chairman of the legal committee that the resolution 'was not intended to cover, and did not refer to teachers who were already in the Department, and who had been given a rating as in the case of the teachers above mentioned; but applied to incoming teachers'. The teachers 'above mentioned' were the four teachers who were appointed at the same time as respondents. This interpretation was undoubtedly correct. But, in applying it, the Board discriminated against plaintiffs, who, so far as the resolution is concerned, were placed in the same class with the four other teachers.

"3. The legal adviser of the Board, in June of 1937, in a formal opinion to the Board dealing with this controversy, gave it as his opinion that 'the facts as disclosed by the records conclusively show that as a matter of equity and justice, this teacher (Mr. Fry) has a valid claim. There appears to be no authority whatsoever for Mr. Snow's interpretation of the February 16, 1932, resolution, which he interpreted to mean that a teacher who has been *appointed*

to the Department on a definite rating based on creditable outside experience and granted a leave of absence, was to come within the purview of the February 16th resolution. To so hold would be reading into that resolution something which was not mentioned.

" 'There is no doubt that Mr. Fry was "appointed" to the San Francisco School Department in November, 1931; that the resolution of February 16, 1932, abolishing previous teaching experience was expressly applicable to teachers not as yet "appointed"; that teachers on leaves of absence were already in the School Department. Therefore, Mr. Fry should not have been reduced in his rating. . . . ' These conclusions of the legal adviser are sound.

"Defendants contend that the ordinary rules of contract apply to a teacher, and that, since plaintiffs accepted their reduced rating, they are barred from now questioning its validity. ▪▪▪ While it is true that the relation between the Board and a teacher is that of employer and employee, and that this relationship is created by contract, the terms of that contract are to be found in the authority granted the Board by law. (*Martin* v. *Fisher*, 108 Cal. App. 34 [291 Pac. 276].) The rules and regulations of the Board, and the resolutions of the Board fixing the status of teachers, are integral parts of that contract. The contract is contained in the statutes, the rules and regulations of the board, the resolutions appointing plaintiffs, and the resolutions of the Board. Certainly, it cannot be contended that the Board can fix the status of a teacher by its rules and regulations, and by resolution, and then by a letter from an employee improperly interpreting the resolutions, claim that the status is different from that fixed by the rules and regulations and by the resolution. In this case, when plaintiffs were first employed, they were properly given advanced ratings. It is admitted that, under the then existing rules and regulations, plaintiffs were lawfully entitled to such ratings. If we are correct in our conclusion that the resolutions of February 16, 1932, and of August 29, 1934, did not apply to plaintiffs, then it must be a fact, as found by the trial court, that, under existing rules and regulations, plaintiffs were entitled to the advanced ratings. These rules and regulations constitute, and are part of, the contract of the parties, and under them plaintiffs were entitled to the advanced ratings.

■ "The fact that Snow, the Assistant Director of Personnel, erroneously informed plaintiffs that the resolution of February 16, 1932, applied to them, and that plaintiffs stated that, if that were necessary, they would accept the lower ratings, cannot serve to change the terms of the contracts of the parties as fixed by the rules and regulations. Snow erroneously interpreted the resolution, informed plaintiffs of his erroneous conclusion, and on that basis the plaintiffs 'accepted' the reduction. Their rights were fixed not by that correspondence but by the rules and regulations of the Board.

■ "Defendants also urge that plaintiffs' claims for back salary are barred by laches, and by the statute of limitations. The trial court awarded plaintiffs back salary for three years prior to October 29, 1937, the date this proceeding was instituted. So far as laches is concerned, the question must be determined by all the facts and circumstances of each case. Lapse of time short of the period provided by the statute of limitations will not bar an action unless prejudice to the defendant is shown. The applicable principles are exhaustively considered, and the cases cited by defendants are distinguished, in *La Shells* v. *Hench,* 98 Cal. App. 6 [276 Pac. 377]. Whether plaintiffs acted seasonably, and whether defendants were prejudiced by such a delay, were questions of fact for the trial court. The record shows that prior to the commencement of these actions the matter was under discussion, and that it was hoped by all concerned that a compromise could be effected. It was after all hope of a compromise had failed that these actions were brought.

■ "It is also urged that plaintiffs' causes of action were barred by the statute of limitations. The trial court awarded plaintiffs back salary at the advanced ratings for a period of three years prior to the commencement of the actions, and held that the balance of their claim was barred. This was the minimum period that the court could have awarded. (*Rosborough* v. *Shasta River Canal Co.,* 22 Cal. 556; *Raymond* v. *Christian,* 24 Cal. App. (2d) 92 [74 Pac. (2d) 536].)"

For the foregoing reasons the judgments appealed from are affirmed.