[Civ. No. 15897. Fourth Dist., Div. Two. Jan. 14, 1977.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION,
Plaintiff and Respondent, v.
COACHELLA VALLEY UNIFIED SCHOOL DISTRICT et al.,
Defendants and Appellants.

914

**COUNSEL**

Ray T. Sullivan, Jr., County Counsel, James H. Angell, Assistant County Counsel, W. W. Miller and Gerald Blankenship, Jr., Deputy County Counsels, for Defendants and Appellants.

Robert L. Blake, William D. Dobson, Madalyn J. Frazzini, Mary Ruth Gross, Patrick S. McGovern and Charles L. Morrone for Plaintiff and Respondent.

**OPINION**

**MORRIS, J.**—Appellants, Coachella Valley Unified School District, Board of Trustees, and Eugene Tucker, Superintendent of the District

(hereafter District), appeal from a judgment of the Superior Court of Riverside County, granting the application of respondent, California School Employees Association (hereafter Association), for a writ of mandate compelling the District to pay fringe benefits to all of its classified employees in an amount equal to the highest level then being paid by any one of five districts included in the unified District.

The issue presented in this appeal is whether Education Code section 13584.3 imposes upon a newly unified school district a duty to raise the level of fringe benefits for all classified employees to the highest level being paid by any of the districts included in the unification.

The facts are not in dispute.

On July 1, 1973, Coachella Valley Unified School District became an operating entity as a result of the unification of the four elementary school districts of Coachella, Oasis, Mecca, and Thermal with the Coachella Joint Union High School District of Riverside and Imperial Counties.

During the final year of individual operation, July 1, 1972, to June 30, 1973, each of the five districts paid part or all of the premiums for health insurance on its classified employees, as follows: Coachella Elementary, $300; Oasis Elementary, $289.40; Mecca Elementary, $523.50; Thermal Elementary, $200; and Coachella Valley High School, $289.40. The Mecca Elementary School District was the only district including coverage for the employees' families.

During the early fall of 1973, the first year of unified operation, representatives of the District board met with representatives of employee groups in the District and agreed upon the amount of health insurance premiums to be paid by the new district for the fiscal year July 1, 1973, through June 30, 1974. Pursuant to agreement, the governing board of the new district passed a resolution on October 24, 1973, adopting this agreement, which provided for the District to contribute $341.70 annually for two years toward health insurance for each employee in the District, except for employees previously with the Mecca school district. The $341.70 contribution covered the entire premium for major medical coverage for the individual employee. For employees from the Mecca school district, the agreement provided that the District would continue to provide coverage for the employees'

families. This required a contribution of $505.40 annually for Mecca school district employees. Under the terms of this agreement all employees continued to receive for this two-year period the same or more coverage than they had received prior to the unification.

Beginning with the fiscal year 1975-1976, two years after unification, the health insurance benefits were made uniform for all employees of the unified district. For the fiscal year 1975-1976, the District's contribution was $444.10 for each employee, providing coverage for the employee only.

The trial court held that the unified school district was "viably operative" on October 24, 1973, the date the resolution approving the employee agreement was adopted, and that, from that time, section 13584.3 *required the defendant board of trustees to establish a system of uniform employee benefits for the employees performing like services.*

As a consequence, the trial court ordered that a writ of mandate issue, requiring the District to adopt a unified fringe benefit schedule, and requiring the District to pay to each classified employee of the District, other than former employees of Mecca Elementary School District, the out-of-pocket damages sustained by each such employee as a result of not having the medical dependent coverage provided to Mecca employees.

The court further ordered the District to pay $163.80, plus interest at 7 percent from the date the plan was paid on behalf of Mecca employees, for each of the fiscal years 1973-1974 and 1974-1975, and to mail the same to the last known address of each classified employee who was paid only $371.70 in medical benefits during those years.

Education Code section 13584.3 provides as follows:

"Persons employed in positions not requiring certification qualifications [classified employees] in districts, all or part of whose territory is included in a unification of districts[,] shall continue as employees of the unified school district for not less than two years, and *shall not,* by reason of any unification, *be deprived of any benefit* which they would have had had the unification not taken place. In determining the rights of such employees, their salaries, accumulated leaves, and other rights shall be determined as of the date the unification election was conducted. No

increase in benefits not previously conferred, granted by the governing board of any district, all or part of whose territory is included in a unification of districts, after such unification election, shall be binding on the governing board of the unified district, except that benefits granted in the districts comprising the new unified district which does not become effective until the second succeeding first day of July shall be binding on the governing board of the unified district. Nothing herein contained shall preclude the governing board of the unified school district from making any reasonable reassignment of the duties of such employees. The governing board of the unified district shall establish a system of uniform salaries, employee benefits and working conditions for employees performing like services in conformity with the provisions of this section." (Italics added.)

The parties agree that the application of the first two sentences of section 13584.3 to the facts of this case required the newly unified district to pay for benefits to the employees from the Mecca Elementary School District for two years at the same level they had been receiving prior to the unification. It is the interpretation of the final sentence that is in issue on this appeal.

■ Appellants contend that the trial court was in error in holding that the last sentence of section 13584.3 requires implementation immediately upon completion of unification. Appellants argue that the provision requiring the establishment of uniform benefits becomes operative at a later stage in the development of the unified district.

Under appellants' interpretation, the governing board may increase benefits during the first two years, but may not reduce them. Thereafter, the governing board must establish a system of uniform benefits, which may be either higher or lower than the benefits previously enjoyed by any of the employees.

We agree.

■ In construing a statute, the court should ascertain the intent of the Legislature in order to effectuate the purpose of the law, and if possible, should interpret the statutory language so as to give significance to every word, phrase and sentence in pursuance of the legislative purpose. (*Select Base Materials* v. *Board of Equal.*, 51 Cal.2d 640, 645 [335 P.2d 672]; see also *People* v. *Superior Court (Smith)*, 70 Cal.2d 123, 133 [74 Cal.Rptr. 294, 449 P.2d 230].)

■ Also, a statute should be construed with reference to the entire statutory system of which it forms a part in such a way that harmony may be achieved among its parts. (*Prunty* v. *Bank of America*, 37 Cal.App.3d 430, 436 [112 Cal.Rptr. 370].)

■ Applying these rules of construction to our consideration of section 13584.3, we have concluded that the law permits, in fact specifically enjoins, a delayed implementation of the provision requiring a system of uniform benefits.

Because of the interrelationship of the various parts of the Education Code, it is necessary to consider provisions relating to unification, school financing, and employee relations as all forming a part of the statutory system to which section 13584.3 relates.

The legislative intent with respect to unification of school districts is set forth in Education Code section 3100, in pertinent part, as follows: "It is the intent and purpose of the Legislature that the procedures prescribed by the provisions of this chapter and Chapter 9 (commencing with Section 3001) of this division be utilized primarily for the formation of unified school districts, and that this form of organization be ultimately adopted throughout the state. . . ." The section thereafter expresses the legislative intent that existing high school districts be considered the minimum geographical base for unified districts, and authorizes deviation therefrom only if certain enumerated conditions are substantially met. The conditions include adequate pupil enrollment, financial ability (based upon assessed valuation per pupil), revenue limits per pupil, and tax rates required for revenue limits.

Although these conditions were not applicable to the unification here involved, because the district coincided with an existing high school district, they do serve to emphasize the legislative awareness of the financial considerations involved in unification, and emphasize the legislative intent that financing be adequate in the new district.

Section 13584.3 is found in the immediate context of those provisions of the law dealing with the rights and duties of classified employees. Generally, the law provides that the governing boards shall fix and prescribe the duties (§ 13582) and salaries (§ 13601); that classified employees shall receive not less than the compensation and benefits applicable to their classification (§ 13580.5), and may not be required to

perform duties which are not fixed and prescribed for the position by the governing board (§ 13582.1). It is further provided that the board shall fix annual salaries for the ensuing school year at the time of publication of the annual budget. The law does not prohibit a reduction of salaries by the board; it does provide that increases may be conditional upon the actual receipt by the district of anticipated revenues (§ 13602).

It is against this background that we must consider the provisions relating to salaries and other benefits flowing to the classified employees of a newly unified district.

In drafting section 13584.3, the Legislature was well aware that districts participating in a unification procedure would have established salary schedules for classified employees at levels that varied from district to district, based upon the financial condition of the individual districts.[1] This awareness is demonstrated by the first two sentences of the section. The first sentence, in addition to guaranteeing the employees continued employment for two years, guarantees that they will not be deprived of any benefit they would have received in the old district. The second sentence provides that the employees' rights are to be determined as of the date of the unification election. The following sentence makes it clear that no increase after the election shall be binding upon the unified district, except in a contingency not here applicable. (§ 13584.3.) In other words, these provisions all relate to the first two years after the unification election. No employees are to be dismissed, and no employee is to be reduced in salary or other benefit even though they would be subject to reasonable reassignment of duties.

Presumably the Legislature was also well aware of the requirement of Education Code section 13602 that the governing board fix the annual salaries at the time of publication of the budget. Consequently, it would have had in mind that salaries and other benefits were fixed in contemplation of the revenues that were to be available to the district for the ensuing school year. The single exception to the freezing of benefits on the date of the election, is where the unification does not become

---

[1]The recent decision of the California Supreme Court holding the state public school financing system invalid does not affect the interpretation in reference to the existing system of financing. As the court specifically stated, "Obviously, any judgment invalidating the existing system of public school financing should make clear that the existing system is to remain operable until an appropriate new system . . . can be put into effect." (*Serrano* v. *Priest*, 5 Cal.3d 584, 619 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

effective until the second succeeding first day of July. This means that the individual districts would have prepared the budget and considered their revenues before increasing benefits; it would not be an increase in contemplation of unification, which the Legislature obviously wanted to avoid.

The interpretation urged by respondent and adopted by the trial court would clearly frustrate the legislative scheme, which was to keep the District budget within anticipated revenues while at the same time guaranteeing that no employee would suffer loss of benefits as a result of unification. Furthermore, the rather obvious financial burden imposed on newly unified districts, as a result of such construction, would most assuredly discourage many knowledgeable taxpayer electors from voting in favor of unification. This would operate to thwart the stated legislative purpose of encouraging the unification of school districts throughout the state.

We are convinced that the language used by the Legislature in the final sentence of section 13584.3 does not require this fiscally unsound result.

█    While it is clear that the earlier provisions of section 13584.3 refer to the first two years of the unified district's existence, it is reasonably clear that the last sentence does not. First, the language itself suggests that the district is to exercise its discretion in establishing a system of uniform salaries. The words "shall establish" would be inappropriate if the salaries and other benefits were to be automatically fixed at the highest level being paid by any component district. Also, the final phrase which requires that the system established be "in conformity with the provisions of this section" would be a rather unwieldy way of saying the system shall require payment at the highest level. It is entirely logical, however, if it means, as we believe it does, that the governing board is directed to establish uniformity to the extent possible to yet preserve, during the two-year period, the benefits each employee is entitled to as determined by reference to the date of the unification election.

This interpretation is consistent with the legislative purpose, the legislative scheme, and provides a fiscally sound transition, without impairing the rights of any employees as they were entitled prior to unification.

Although the issue has not been raised directly in this court, respondent's brief and the trial court's conclusions of law suggest that the unified District is "constitutionally" obligated to give to all employees performing like services, the same "benefits" it gave on October 24, 1973, to the former Mecca school district employees.

■ Neither the Constitution, nor any statutory mandate requiring uniformity, prohibits a school board from making reasonable classifications. In *Fry* v. *Board of Education,* 17 Cal.2d 753 [112 P.2d 229], the California Supreme Court considered the extent to which uniformity is required in fixing the salaries of teachers under Education Code section 13506.[2] The court stated, " 'It must be conceded that, within the limits fixed by the School Code, the Board has discretionary control over the salaries of teachers. (*Fidler* v. *Board of Trustees,* 112 Cal.App. 296 . . . ; *Abraham* v. *Sims,* 2 Cal. (2d) 698 . . . .) However, it must also be conceded that the legislature had enjoined on such Boards, within reasonable limits, the principle of uniformity of treatment as to salary for those performing like services with like experience. This same limitation exists in the rules and regulations of the appellant Board. This limitation, however, does not prevent the Board from making reasonable classifications. There can be no doubt that the Board may reasonably classify between teachers with teaching experience in San Francisco and those with teaching experience outside.' " (*Fry* v. *Board of Education, supra,* 17 Cal.2d 753, 757-758.) It has been held that the same section of the Education Code permits a reasonable classification brought about by policy changes because of employment needs. (*Sayre* v. *Board of Trustees,* 9 Cal.App.3d 488, 491 [88 Cal.Rptr. 355]; *Lawe* v. *El Monte School Dist.,* 267 Cal.App.2d 20, 22-23 [72 Cal.Rptr. 554].)

The obvious purpose of provisions requiring uniformity is to prevent favoritism or other arbitrary action on the part of the school boards. (*Sayre* v. *Board of Trustees, supra,* at p. 491.) Exact uniformity, without regard to organizational or administrative needs of a district, would be irreconcilable with the prudent management of a district.

[2]Section 13506 of the Education Code provides in pertinent part: "Effective July 1, 1970, each person employed by a district in a position requiring certification qualifications except a person employed in a position requiring administrative or supervisory credentials, shall be classified on the salary schedule on the basis of uniform allowance for years of training and years of experience. Employees shall not be placed in different classifications on the schedule, nor paid different salaries, solely on the basis of the respective grade levels in which such employees serve. . . ."

As the court stated in *Aebli* v. *Board of Education,* 62 Cal.App.2d 706, 757 [145 P.2d 601]: "Obviously, any time there is a change of policy, it creates a lack of uniformity in the sense that teachers who become members of the department while one policy is in effect are treated differently from teachers who become members of the department while a new policy is in effect. Such lack of 'uniformity' is inevitable as a school board progresses with the needs of various periods and accordingly changes its policy." As the court went on to point out, the alternative, in order to secure "uniformity" would be to change the service status rating of teachers with the district every time the members of the board determined to change policy. This would of course violate the rights of those teachers who attained status under a preexisting policy.

Unification creates a reorganization within the districts that reasonably justifies a temporary lack of uniformity in order to guarantee to employees the preexisting rights to benefits they enjoyed in the component districts.

Because of the construction here adopted, it is unnecessary to consider the effect of the agreement entered into by respondent as a result of the meet and confer process pursuant to Education Code section 13085. (Repealed and replaced by Gov. Code, §§ 3541.3 and 3543.3 eff. July 1, 1976.)

Having concluded that the appellants, Coachella Valley Unified School District and its board of trustees had a two-year period following unification in which to establish a system of uniform fringe benefits, and that appellants have fully complied with the requirements of Education Code section 13584.3 with respect to the payment and fixing of benefits to its classified employees, the judgment is reversed, with directions to the trial court to enter judgment for the defendants.

Kaufman, Acting P. J., and Tamura, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 9, 1977.