[Civ. No. 18306. Third Dist. Apr. 29, 1980.]

BENJAMIN STACKLER, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES et al.,
Defendants and Respondents.

COUNSEL

Robert N. Black for Plaintiff and Appellant.

George Deukmejian, Attorney General, Talmadge R. Jones and Jan K. Damesyn, Deputy Attorneys General, for Defendants and Respondents.

OPINION

PUGLIA, P. J.—Plaintiff Benjamin Stackler appeals from the judgment of dismissal entered after defendant's demurrer was sustained without leave to amend.

Plaintiff sought mandate and declaratory and injunctive relief to compel the defendants, Department of Motor Vehicles (DMV) and its director, to renew his driver's license without requiring him to submit to a full face photograph. His petition and complaint alleges (1) that DMV lacks statutory authority (a) to require his photographic likeness on a *renewed* license, and (b) to retain copies of licenses on which the licensee's photograph appears, and (2) that the requirement of a photograph infringes his right of privacy in violation of article I, section 1 of the California Constitution. The trial court ruled plaintiff's second amended petition and complaint did not state a cause of action. Agreeing with the trial court, we affirm.

In our review of the order sustaining demurrer, we accept as true all facts well pleaded in the petition and complaint.

Plaintiff appeared at the DMV office in Davis and applied to have his driver's license renewed. He completed the application process except that he refused to have his photograph taken. Because of his refusal, his application was denied. His appeal to the Director of DMV was denied; thereafter this law suit was commenced.

I.

Plaintiff maintains that statutory authority for DMV's requirement that the licensee's photographic likeness appear on his driver's license exists only for the issuance of original licenses, not renewed licenses.

Vehicle Code section 12811, subdivision (a),[1] prescribes the contents of a driver's license as follows: "When the department determines that the applicant is lawfully entitled to a license it shall issue the person a driver's license as applied for. The license shall state the class of license for which the licensee has qualified and shall bear thereon the distinguishing number assigned to the applicant, the date of expiration, the name, age, and residence address of the licensee, a brief description and *photograph of the licensee for the purpose of identification* and space for the signature of the licensee." (Italics added.)

More explicitly, section 12800.5 requires: "A license issued after January 1, 1974, *shall bear a fullface photograph of the licensee.*" (Italics added.)

Plaintiff argues, however, that the quoted sections are inapplicable to the renewal of licenses, asserting that "issue" and "renew" are discrete rather than overlapping concepts. Plaintiff suggests the Legislature intended to distinguish between licenses issued and licenses renewed because section 12814, which concerns renewals, does not require a photograph of the licensee.

We conclude that the words "issue" and "issued," as used in section 12811, subdivision (a), and section 12800.5 respectively, encompass both the original delivery of a license to an applicant as well as its redelivery, i.e., the original issuance as well as the reissuance. Any other interpretation would lead to absurd consequences which the Legislature manifestly did not intend. (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].) To illustrate, if plaintiff were correct that section 12811 governs only original issuance and section 12814 controls renewal, licenses which are renewed would necessarily be issued in blank, since section 12814 sets forth no requirements for the content of renewed licenses.[2] Furthermore, other

---

[1] All further section references are to the Vehicle Code unless otherwise indicated.

[2] Section 12814 provides: "(a) Application for renewal of a license shall be made at an office of the Department of Motor Vehicles by the person to whom the license was issued. The department may in its discretion require an examination of the applicant as upon an original application, or an examination deemed by the department to be appropriate considering the licensee's record of convictions and accidents, or an examination deemed by the department to be appropriate in relation to evidence of a condition which may affect the ability of the applicant to safely operate a motor vehicle. The age of a licensee, by itself, shall not constitute evidence of a condition requiring an examination of the driving ability. If the department finds any such evidence, the department shall disclose the evidence to the applicant or licensee. In the event such person is ab-

sections of the Vehicle Code which contain only the operative word "issue" (instead of "issue or renew") would affect only those licensees possessing an original license, who alone among licensees would be required to obtain a duplicate in the event that such a license was lost, destroyed or mutilated (§ 12815),[3] and to have such license in their immediate possession at all times (§ 12951).[4]

Plaintiff points to sections 12805, 12807, 12809 and 12816 which, he claims, demonstrate that issuance and renewal are regarded by the Legislature as distinct concepts. The first three cited sections all contain the operative phrase "issue or renew" and specify grounds for refusing a license. In respect to those three sections, we discern that the Legislature

---

sent from the state at the time the license expires, the Director of Motor Vehicles may extend the license for a period of one year from the expiration date of the license.

"(b) Renewal of a driver's license shall be under terms and conditions prescribed by the department and, at the discretion of the director, licenses may be extended for not to exceed one year when the number of renewal applications to be processed in a year will exceed the number of applications in the previous year or the next subsequent year by more than 10 percent.

"(c) The department may adopt and administer such regulations as shall be deemed necessary for the public safety in the implementation of a program of selective testing of applicants, and, with reference to this section, the department may waive tests for purposes of evaluation of selective testing procedures.

"(d) The department shall report to the Legislature on or before August 1st, annually, describing the number of licenses extended during the preceding fiscal year pursuant to subdivision (b) and the reason for such action. Such report shall also include the regulations adopted pursuant to subdivision (c), the categories of test waivers granted, the purposes for which waivers were granted, and the result of the evaluation made during the preceding fiscal year of the selective testing program."

[3]Section 12815 provides: "In the event a driver's license issued under this code is lost, destroyed or mutilated, the person to whom it was issued shall obtain a duplicate upon furnishing to the department (a) satisfactory proof of such loss, destruction, or mutilation and (b) if the licensee is a minor, evidence of permission to obtain a duplicate secured from the parents, guardian or person having custody of such minor. Any person who loses a driver's license and who, after obtaining a duplicate, finds the original license shall immediately destroy the original license."

[4]Section 12951 provides: "(a) The licensee shall have the license issued to him in his immediate possession at all times when driving a motor vehicle upon a highway.

"Any charge under this subdivision shall be dismissed when the person charged produces in court a driver's license duly issued to such person and valid at the time of his arrest, except that upon a third or subsequent charge the court in its discretion may dismiss the charge. When a temporary, interim, or duplicate driver's license is produced in court, the charge shall not be dismissed unless the court has been furnished proof by the Department of Motor Vehicles that such temporary, interim, or duplicate license was issued prior to the arrest, that the driving privilege and license had not been suspended or revoked, and that the person was eligible for such temporary, interim, or duplicate license.

"(b) The driver of a motor vehicle shall present his license for examination upon demand of a peace officer enforcing the provisions of this code."

wished to emphasize the grounds for refusing a license are the same for initial applications as for renewals. Section 12816 distinguishes between "original" and "renewal" licenses in respect to the term of licensure. However, in either event both original and renewed licenses must still be issued.

In construing the Vehicle Code provisions in question, we have considered the entire statutory scheme of which they are a part in order that harmony may be achieved among the various components (*Silver v. Brown* (1966) 63 Cal.2d 841, 845-846 [48 Cal.Rptr. 609, 409 P.2d 689]; *California Sch. Employees Assn. v. Coachella Valley Unified Sch. Dist.* (1977) 65 Cal.App.3d 913, 919 [135 Cal.Rptr. 630].) Considered in that perspective, we are satisfied that sections 12811 and 12800.5 apply equally to renewals as to original issuance of licenses. DMV therefore had statutory authority to require plaintiff as a condition of renewal to submit to a photograph of his full face and to include a print of that photograph on his renewed license.

■ We reject plaintiff's contention that DMV has no statutory authority to maintain in its files copies of licenses bearing photographs. The law is well settled that governmental officials may exercise those implied powers reasonably necessary for the efficient administration of powers expressly granted by statute. (*Dickey v. Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 810 [151 P.2d 505, 157 A.L.R. 324]; *City of San Marcos v. California Highway Com.* (1976) 60 Cal.App.3d 383, 405 [131 Cal.Rptr. 804].) As a matter of rational administrative practice, DMV must retain copies of licenses issued in order to have a complete and accurate record of its official acts. This record keeping practice is both necessary and convenient to the fulfillment of DMV's official function and is therefore authorized. (See *People v. Shaw* (1941) 17 Cal.2d 778, 811 [112 P.2d 241]; *People v. Sperl* (1976) 54 Cal.App.3d 640, 663-664 [126 Cal.Rptr. 907], cert. den., 429 U.S. 832 [50 L.Ed.2d 97, 97 S.Ct. 95].)

## II.

The petition and complaint also alleges that the taking and display of plaintiff's photograph for use on a renewed driver's license violates his state constitutional right to privacy because he "holds a genuine and conscientious personal belief that the license photograph requirement impinges upon his personal privacy, personal dignity, and liberty of conscience."

As relief plaintiff sought a declaration "that the rule, policy, or procedure by which the DMV requires applicants for the renewal of a driver's license to be photographed, is unconstitutional and void. . . ." So pled, the plaintiff has put in issue only the constitutionality of the statutes directly requiring the taking and display of the license photograph and does not tender the legality of any dissemination of the photograph once properly acquired. Although the argument below ventured into various potential distributions of the photograph, our review is limited to the issues tendered by the pleading which have been resolved adversely to the plaintiff by the order sustaining the demurrer. Accordingly, we do not reach any issue which might have been tendered by a pleading more narrowly focused upon a detailed and specific use of a photograph properly acquired.

■ We turn to plaintiff's claim that his privacy is violated by the taking of his photograph and its display on *his* license.

Section 12811 states that a license shall bear the photograph of the licensee "for the purpose of identification." Consistent with that purpose, section 12951, subdivision (b), requires a "driver of a motor vehicle to present his license for examination upon demand of a peace officer enforcing the provisions of [the Vehicle Code]" (see fn. 4, *ante*, p. 244); section 12952 requires a licensee to "display his driver's license upon request of a magistrate or judge before whom he may be brought for violation of any traffic law." In the petition and complaint plaintiff alleges such compelled display of a licensee's photograph constitutes a violation of the right of privacy.

We confess our inability to comprehend plaintiff's sensitivity to the display of a photographic image of his face in circumstances where the viewer at the same time is necessarily confronted with plaintiff's physiognomic reality. Plaintiff's photograph appears on *his* driver's license which is under *his* control. Other than the narrowly limited circumstances discussed above, plaintiff is under no compulsion to display his license to anyone. He is of course free to use it as a convenient and ready means of identification, but whether or not he does so is entirely up to him. If he does, the voluntary display of the license will not disclose anything of a private nature. As with its compulsory display, plaintiff's license depicts no more than a photographic image of the flesh and blood individual who is contemporaneously displaying it to the viewer.

Plaintiff does not challenge the ability of DMV accurately to capture his photographic likeness. He does not allege that his photograph would present him in an unusual, uncomplimentary, embarrassing or false light; nor does plaintiff allege that display of his physiognomy, either in person or by photograph, would infringe upon his free exercise of First Amendment rights (cf. *Ghafari* v. *Municipal Court* (1978) 87 Cal. App.3d 255, 260-265 [150 Cal.Rptr. 813]).[5]

In the present circumstances, there simply can be no reasonable expectation of privacy in that which is already public. (See *Gill* v. *Hearst Publishing Co.* (1953) 40 Cal.2d 224, 230 [253 P.2d 441].) The gravamen of the tort of invasion of privacy is unwarranted publication of details of plaintiff's private life. (*Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 828 [134 Cal.Rptr. 839]; see also 4 Witkin, Summary of Cal. Law (8th ed. 1974) § 343, p. 2605-2606.) Where plaintiff retains control over his own photograph, it cannot be the mechanism by which his privacy is invaded. Moreover, the mere retention, without more, by DMV of a copy of a licensee's photograph does not constitute unwarranted publication and thus is not an invasion of privacy.

California's constitutional protection of the right of privacy is directed at four principal "mischiefs": "(1) 'government snooping' and the secret gathering of personal information; (2) the overbroad collection and retention of unnecessary personal information by government and business interests; (3) the improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third party; and (4) the lack of a reasonable check on the accuracy of existing records." (*White* v. *Davis* (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222]; *Porten* v. *University of San Francisco, supra,* 64 Cal.App.3d at p. 830; *Central Valley Chapter of 7th Step Foundation, Inc.* v. *Younger* (1979) 95 Cal. App.3d 212, 235-236 [157 Cal.Rptr. 117]; *Division of Medical Quality* v. *Gherardini* (1979) 93 Cal.App.3d 669, 677 [156 Cal.Rptr. 55].)

---

[5]The petition and complaint alleges plaintiff has "a genuine and conscientious personal belief that the license photograph requirement impinges upon his personal privacy, personal dignity, and liberty of conscience." Obviously, plaintiff's subjective belief that his privacy has been or will be infringed, no matter how sincere, is not the equivalent of a religious conviction entitled to First Amendment protection.

The allegations of the petition and complaint, taken as true, do not implicate any of the excesses at which the constitutional provision protecting the right of privacy is directed.

The judgment is affirmed.

Regan, J., and Blease, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 25, 1980. Bird, C. J., was of the opinion that the petition should be granted.