TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-1105 |
| of | : | |
| | : | March 13, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE SCOTT WILDMAN, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following questions:

1. Except in certain circumstances relating to a student body association, is an auxiliary organization of a community college district required to reimburse the district for services district employees perform under the direction or on behalf of the auxiliary organization?

2. In the event that an auxiliary organization is required to reimburse the community college district, does the chancellor of the California community colleges have the authority to "forgive" an auxiliary organization's reimbursement payment relating to a community college district's past practice of providing district employee services without reimbursement?

3. Does the chancellor of the California community colleges have the authority to recommend deferring the payment of reimbursement by an auxiliary organization for any reason, including that community college district officials believed in "good faith" that reimbursement was not required?

4. May reimbursement by an auxiliary organization be in the form of non-monetary benefits that the auxiliary organization provides to a community college district, such as increased community awareness or other such benefits that are agreed upon by district officials and the auxiliary organization?

CONCLUSIONS

1.      Except in certain circumstances relating to a student body association, an auxiliary organization of a community college district is required to reimburse the district for services district employees perform under the direction or on behalf of the auxiliary organization.

2.      The chancellor of the California community colleges does not have the authority to "forgive" an auxiliary organization's reimbursement payment relating to a community college district's past practice of providing district employee services without reimbursement.

3.      The chancellor of the California community colleges has the authority to recommend deferring the payment of reimbursement by an auxiliary organization for any appropriate reason, including that community college district officials believed in "good faith" that reimbursement was not required.

4.      Reimbursement by an auxiliary organization may be in the form of non-monetary benefits that the auxiliary organization provides to a community college district, such as increased community awareness or other such benefits that are agreed upon by district officials and the auxiliary organization.

## ANALYSIS

The Legislature has enacted a comprehensive statutory scheme (Ed. Code, §§ 70900-88270; hereafter "Act") **Footnote No. 1** governing the establishment of community colleges throughout the state. A board of governors ("board") is authorized to set standards for community colleges (§ 70901) and appoint a chief executive officer, the chancellor of the California community colleges ("chancellor") (§ 71090). The state is divided into community college districts (§ 70900), with each district having its own board of trustees governing the community colleges within the district. A district may initiate programs and act in any manner "not in conflict with or inconsistent with, or preempted by, any law and that is not in conflict with the purposes for which community college districts are established." (§ 70902.)

The focus of this opinion is upon "auxiliary organizations" of community college districts. Section 72670 provides:

"The governing board of a community college district may establish auxiliary organizations for the purpose of providing supportive services and specialized programs for the general benefit of its college or colleges. As used in this article, 'auxiliary organization' may include, but is not limited to, the following entities:

"(a) Any entity in which any official of a community college district participates as a director as part of his or her official position.

"(b) Any entity formed or operating pursuant to Article 4 (commencing with Section 76060) of Chapter 1 of Part 47.

"(c) Any entity which operates a commercial service for the benefit of a community college or district on a campus or other property of the district.

"(d) Any entity whose governing instrument provides in substance both of the following:

"(1) Its purpose is to promote or assist a community college or district, or to receive gifts, property and funds to be used for the benefit of the community college or district or any person or organization having an official relationship therewith.

"(2) Any of its directors, governors, or trustees are either appointed or nominated by, or subject to, the approval of the governing board of the district, an official of the district, or selected, ex officio, from the membership of the student body or the faculty or the governing board or the administrative staff of the district.

"(e) Any entity which is designated as an auxiliary organization by the district governing board." **Footnote No. 2**

The Legislature has specified various requirements to be followed in the operation of an auxiliary organization. (§§ 72670-72682.)

In addition, the board, as part of its "general supervision over community college districts" (§ 70901, subd. (b)) and in furtherance of its rulemaking authority (§ 70901, subd. (c)), has adopted regulations governing auxiliary organizations (Cal. Code Regs., tit. 5, §§ 59250-59272). **Footnote No. 3** Regulation 59259 provides:

"The functions to be undertaken by auxiliary organizations are for the purpose of providing activities which are an integral part of the community college educational programs. The following supportive services and specified programs which may be developed and operated by auxiliary organizations have been determined by the Board of Governors to be appropriate:

"(a) Student association or organization activities;

"(b) Bookstores;

"(c) Food and campus services;

"(d) Student union programs;

"(e) Facilities and equipment;

"(f) Loans, scholarships, grants-in-aids;

"(g) Workshops, conferences, institutes, and federal projects;

"(h) Alumni activities;

"(i) Supplementary health services;

"(j) Gifts, bequests, devises, endowments and trusts; and

"(k) Public relations programs."

With these statutes and administrative regulations in mind, we turn to the four questions presented for resolution.

1.      Reimbursement for District Employee Services

The first question to be resolved is whether, except in certain circumstances relating to a student body association, **Footnote No. 4** an auxiliary organization **Footnote No. 5** must reimburse a community college district for services performed by district employees under the direction or on behalf of the auxiliary organization. We conclude that it must.

The regulations of the board require that an auxiliary organization be organized under terms approved by the chancellor that provide among other things:

"Full reimbursement to the district for services performed by district employees under the direction of the auxiliary organization. Methods of proration where services are performed by district employees for the auxiliary organization shall be simple and equitable." (Reg. 59257, subd. (j)(6).)

In examining the language of Regulation 59257, we are guided by the following principles of construction set forth in *Industrial Indemnity Co.* v. *City and County of San Francisco* (1990) 218 Cal.App.3d 999, 1008-1009:

"The interpretation of a statute or regulation is an issue of law. [Citations.] Generally, the same rules of construction and interpretation that apply to statutes govern the construction and interpretation of an administrative agency's rules and regulations. [Citations.] The aim of such construction is to determine the legislative intent so that the purpose of the statute or the regulation promulgated pursuant to the statute may be given effect. [Citations.]

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . An agency's own interpretation of its regulation is entitled to great weight, if it is consistent with its enabling statute. [Citations.]"

Here, the chancellor has interpreted Regulation 59257 as requiring full reimbursement by an auxiliary organization for services district employees perform on behalf of the organization. We find no inconsistency between the chancellor's interpretation of the regulation and the general provisions of the Act or the specific provisions relating to auxiliary organizations. Such construction carries out the purposes of the legislative scheme.

We thus conclude in answer to the first question that except in certain circumstances relating to a student body association, an auxiliary organization of a community college district is required to reimburse the district for services district employees perform under the direction or on behalf of the auxiliary organization.

2. Reimbursement Forgiveness

The second question presented is whether the chancellor may "forgive" an auxiliary organization's reimbursement payment where a community college district has provided district employee services without reimbursement. We conclude that the chancellor may not do so.

Nothing in Regulation 59257 purports to give the chancellor the authority to "forgive" the payment of reimbursement by an auxiliary organization. Indeed, the requirement of "*[f]ull* reimbursement to the district . . ." (italics added) negates the possibility of forgiveness. The chancellor is obligated to approve the terms under which auxiliary organizations are to operate. A waiver or forgiveness of the reimbursement requirement is not among the discretionary powers granted by the board to the chancellor. In administering Regulation 59257, the chancellor has interpreted his responsibilities as not including the power to "forgive" the payment of reimbursement.

Administrative officials have only those powers that have been expressly conferred, that are necessary for the due and efficient administration of powers expressly granted, or that may fairly be implied from the statute or regulation granting the powers. (See *California Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 824-825; *Dickey* v. *Raisin Proration Zone No. 1* (1944) 26 Cal.2d 796, 810; *Rich Vision Centers, Inc.* v. *Board of Medical Examiners* (1983) 144 Cal.App.3d 110, 114; *Stackler* v. *Department of Motor Vehicles* (1980) 105 Cal.App.3d 240, 245.) We find no forgiveness or waiver authority in the powers delegated to the chancellor by statute or regulation.

We conclude that the chancellor does not have the authority to "forgive" an auxiliary organization's reimbursement payment relating to a community college district's past practice of providing district employee services without reimbursement.

3. Reimbursement Deferral

The third question posed is whether the chancellor has the authority to recommend deferring the payment of reimbursement by an auxiliary organization for any appropriate reason, including that community college district officials believed in "good faith" that reimbursement was not required. We conclude that the chancellor has such authority.

The timing of an auxiliary organization's reimbursement is not specified in Regulation 59257. We believe such absence of an express directive gives the chancellor discretion to determine a reasonable period of time within which reimbursement must be paid by an auxiliary organization. The chancellor may find deferral of the reimbursement requirement to be particularly appropriate when an auxiliary organization is newly formed or where there has been legitimate, good faith debate concerning the meaning of Regulation 59257's requirements. Indeed, that is precisely how the chancellor has administratively construed the regulation. We find the chancellor's administrative practice and interpretation of Regulation 59257 to be consistent with the governing statutes and purposes of the board's implementing regulations.

We conclude that the chancellor has the authority to recommend deferring the payment of reimbursement by an auxiliary organization for any appropriate reason, including that community college district officials believed in "good faith" that reimbursement was not required.

4.      Non-Monetary Reimbursement

The final question to be considered is whether reimbursement by an auxiliary organization may be in the form of non-monetary benefits that the auxiliary organization provides to a community college district, such as increased community awareness or other such benefits that are agreed upon by district officials and the organization. We conclude that an auxiliary organization's reimbursement payment may include non-monetary benefits.

The definition of "reimbursement" is not simply to repay in cash, but "to make restoration or payment of an equivalent to . . . ." (Webster's Third New International Dict. (1971) p. 914.) If an auxiliary organization, with the agreement of district officials, were to transfer to the district an asset of recognized value, such as stock or real property, as payment for services provided by district employees, undoubtedly such transfer would constitute "reimbursement" just as if payment has been made in cash.

Intangible benefits, such as developing good will toward the community college district or increased community awareness of community college programs, may similarly be given in exchange for the use of district employees by an auxiliary organization. Such intangibles as "good will" are commonly valued and taken into consideration in connection with commercial transactions such as the sale of a business. (See Code Civ. Proc. § 1263.510.) The value of the intangible benefits given to a district would be a proper subject of disclosure in the auxiliary organization's annual audited statement of its financial condition required by section 72672.

We recognize that the benefits and services conferred annually upon a community college district by an auxiliary organization ordinarily far exceed whatever value district employee services to the organization might total. That is the whole purpose of an auxiliary organization--to benefit the district by promoting its educational mission. (§ 72670; Reg. 59259.) **Footnote No. 6** The performance of services by an auxiliary organization thus saves public funds that might otherwise be expended by the district in performing the auxiliary services. (See § 70902, subd. (b)(11).) We are informed, for example, that last year auxiliary organizations and related foundations raised approximately $60 million for community college districts throughout the state. The value of district employee services provided to the organizations during the same period was obviously minuscule in comparison.

Nevertheless, it is conceivable that the value of the services and contributions of an auxiliary organization to a community college district might be exceeded by the value of the services performed by district employees for the organization during a particular year. For example, the first year of an auxiliary organization's operation could raise an issue of reimbursement valuation.

We conclude that reimbursement by an auxiliary organization may be in the form of non-monetary benefits that the auxiliary organization provides to a community college district, such as increased community awareness or other such benefits that are agreed upon by district officials and the auxiliary organization.

\* \* \* \* \*

---

**Footnote No. 1**
All references hereafter to the Education Code are by section number only.
**Footnote No. 2**
An "entity formed or operating pursuant to Article 4" is a student organization. (See §§ 76060-76067; 75 Ops.Cal.Atty.Gen. 143 (1992).)
**Footnote No. 3**
All references hereafter to title 5 of the California Code of Regulations are by regulation number only.
**Footnote No. 4**
A student body association is governed by special statutory provisions. (See, e.g., §§ 76060, 76065.)
**Footnote No. 5**
The scope of this opinion is limited to auxiliary organizations operating pursuant to current law. (See § 72682.)
**Footnote No. 6**
Because the duties and purposes of an auxiliary organization are to benefit a community college district and contribute to its educational mission, no issue of a "gift of public funds" (Cal. Const., art. XVI, § 6) is present when district employees perform services for the organization. (See *California Housing Finance Agency* v. *Elliot* (1976) 17 Cal.3d 575, 583; *Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678, 690-691; *California Emp. Etc. Com.* v. *Payne* (1947) 31 Cal.2d 210, 216-217; *County of Los Angeles* v. *La Fuente* (1942) 20 Cal.2d 870, 876-878; *County of Alameda* v. *Janssen* (1940) 16 Cal.2d 276, 280-284; *Bickerdike* v. *State* (1904) 144 Cal. 681, 692; *Paramount Unified School Dist.* v. *Teachers Assn. of Paramount* (1994) 26 Cal.App.4th 1371, 1388-1389; *Mitchell* v. *County Sanitation Dist.* (1957) 150 Cal.App.2d 366, 372; 80 Ops.Cal.Atty.Gen. 260, 262-263 (1997); 74 Ops.Cal.Atty.Gen. 159, 162 (1991).)

---