[Civ. No. 4116. Fourth Dist. Feb. 8, 1950.]

MARY P. HEINLEIN, Appellant, v. THE ANAHEIM UNION HIGH SCHOOL DISTRICT et al., Respondents.

Forgy, Reinhaus & Forgy and Clark Miller for Appellant.

Joel E. Ogle, County Counsel, George F. Holden and Stephen K. Tamura, Deputy County Counsel, for Respondents.

MUSSELL, J.—This is an appeal from a judgment denying a petition for a writ of mandate in which it was sought to compel the trustees of the Anaheim Union High School District to recognize petitioner as a "satisfactory employee" and to pay her the salary fixed for such an employee.

It was alleged that during the school years of 1947-48 and 1948-49 the Anaheim Union High School, acting through the superintendent of schools, Paul H. Demaree, classified the petitioner as an unsatisfactory teacher; that said rating was discriminatory, arbitrary and unreasonable and that it prevented the petitioner from having annual increases in increment of salary; that the method of fixing petitioner's salary was an unlawful classification of petitioner and an attempt to evade the Tenure Act (Ed. Code, §§ 13521-13559) and the statutory provisions relating to the fixing of compensation for certificated employees (Ed. Code, §§ 13801-13807), and that petitioner lost her annual increase in salary by reason of such classification.

The respondents, in their answer, admitted finding petitioner unsatisfactory for each of the school years in question but denied that the action of the trustees was arbitrary, discriminatory or unreasonable or that it was accomplished with the intent or purpose of evading the provisions of the Education Code.

A trial was had on the issues thus framed and findings of fact and conclusions of law favorable to the respondents were adopted.

Petitioner was employed as a teacher in the Anaheim Union High School since 1924. She formerly taught English, but since the school year 1943-44 was gradually transferred to study hall. For the school year 1946-47 petitioner received a salary of $3,250 in accordance with the schedule for that year, which provided a maximum basic salary of $3,050 for

teachers with 14 or more years of experience and an additional sum of $200 for general secondary credentials. Salaries for that year were based wholly upon years of experience and training.

In fixing salaries for the school year 1947-48, the respondent board of trustees for the first time adopted a policy of denying salary increases to teachers found to be unsatisfactory. Teachers found to be unsatisfactory received the same salary as adopted for them for the previous year, whereas teachers found to be satisfactory received an increment of approximately $800. The same policy was continued for the school year 1948-49 and the schedule adopted for that year again provided that no increment would be granted teachers found to be unsatisfactory. Petitioner was found to be unsatisfactory for each of the school years 1947-48 and 1948-49 and her salary for those years remained at $3,250 per year.

In determining whether or not a teacher was satisfactory, the board of trustees followed the recommendations of an administrative committee, the members of which were Mr. Demaree, the principal of the high school, two vice-principals, and the head of the department in which the teacher taught. This committee, which met in the month of May immediately preceding the commencement of each school year, recommended to the board that petitioner be found unsatisfactory for the respective school years in controversy. The committee evaluated the teacher's teaching effectiveness and educational worth by measuring her actual classroom performances against a number of factors, including personality, skill as an instructor, scholarship, ability to discipline, character building, professional growth, professional loyalty, community interests and standing, power of expression oral and written, influence on pupils, tact and sympathy, initiative, persistence, energy, personal appearance and culture and refinement.

Mr. Demaree testified that these standards are used by the California Teachers' Association in recommending teachers for employment. There was testimony by the members of the committee that they had from time to time during the year personally observed the petitioner's classroom performances and determined that appellant was not a satisfactory teacher from personal observation as well as information received from students in classes taught by petitioner.

Mr. Demaree presented the committee's recommendation to the board of trustees and discussed with them the various factors relating to petitioner's teaching effectiveness which

had been considered by the committee. No formal hearings were had and no testimony taken, nor were there any written records or affidavits presented. The petitioner was not present at either of the meetings and was given no notice or opportunity to be heard.

Petitioner contends that the board of trustees violated the constitutional guarantees against unfair discrimination and did not follow the principle of uniformity in fixing salaries; that the procedural requirements of the Fourteenth Amendment to the Constitution were not followed and that in any classification system whereby one teacher is paid more than another, it is necessary that there be some objective standard by which the different teachers are rated.

Section 13802 of the Education Code provides that the governing body of any school district shall fix and order paid the compensation of persons in public school service. This section is based on former School Code, section 5.731.

In *Rible* v. *Hughes*, 24 Cal.2d 437, at page 443 [150 P.2d 455, 154 A.L.R. 137], the court, in considering the interpretation that had been placed upon the provisions of the section in *Kacsur* v. *Board of Trustees*, 18 Cal.2d 586 [116 P.2d 593]; *Fry* v. *Board of Education*, 17 Cal.2d 753 [112 P.2d 229]; *Abraham* v. *Sims*, 2 Cal.2d 698 [42 P.2d 1029] and *Fidler* v. *Board of Trustees*, 112 Cal.App. 296 [296 P. 912], said, at page 444:

"According to these decisions, then, a board of education may exercise its discretion in adopting salary schedules fixing the compensation to be paid to permanent teachers although (1) the schedule must be adopted prior to the beginning of the school year; (2) any allowance based upon years of training and experience must be uniform, and subject to reasonable classification; and (3) the schedule must not be arbitrary, discriminatory or unreasonable."

The principal question for determination in the instant case is whether the action of the school board in denying petitioner a salary increase for the school years in controversy was, under the circumstances presented, a reasonable exercise of its power to fix teachers' compensation and whether a board of trustees of a school district may lawfully increase the salary of an efficient teacher while permitting the salary of an inefficient teacher of like training and experience to remain unchanged.

As was said in *Kacsur* v. *Board of Trustees, supra*, at page 594:

"It is quite possible that a situation might exist in which one of two teachers of similar experience and service might be not only more capable, but also more industrious and willing than the other, who although sufficiently competent to prohibit dismissal, might be somewhat indolent and noncooperative. In such a situation the school board should be permitted to exercise its reasonable discretion in raising the salary of the industrious teacher as a reward for her good work without at the same time having to increase the salary of the undeserving teacher."

It was also held that in an action instituted by a dissatisfied lower salaried teacher, the board could introduce evidence to justify its action. Otherwise, all discretion would be taken from it.

At the trial of the instant action several witnesses testified as to petitioner's conduct as a teacher. Mr. Walsworth, a witness called by petitioner, testified that he was a member of the board of trustees and was present at the meeting in May of 1947, when petitioner was rated as unsatisfactory. He stated that he had two boys and a girl in petitioner's study hall class and that one of the boys and the girl, as well as other students and parents, had complained about the petitioner, and that her work in the study hall was not satisfactory.

Mr. James A. Baker, a witness also called by petitioner, stated that he was a member of the board of trustees and was present at the meeting in 1947 at which it was recommended that petitioner be rated unsatisfactory; that he had talked to students taught by petitioner and was informed by them that they did not learn much under her instruction and that the classroom was not conducted properly as far as discipline was concerned.

Mr. Demaree testified that he was principal of the school and that petitioner had a negative personality, was weak as an instructor, could not control the class and showed no improvement in her teaching ability; that her community interest and standing were poor; that the pupils were not interested; that there was no understanding between pupil and teacher in most cases and that petitioner was entirely lacking in initiative; that through the public address system throughout the building he listened upon several occasions to the progress of the class in petitioner's room and heard a "very monotonous, routine classroom discussion, without life or interest."

Ethel Caverly, head of the English Department of the school

since 1938, testified that she had observed petitioner's conduct in the classes in English and felt that petitioner was lacking in tact and understanding of the individual pupil; that her classroom procedure was done in a rather ''cut and dried manner''; that the students were inattentive and that she requested petitioner's transfer from the English Department.

Lois Whitington testified that she was a vice-principal of the high school, was acquainted with the petitioner, and from the years 1938 to 1941 visited her classes three or four times a year and had observed that petitioner's skill as an instructor was weak; that her personality was not forceful; that it was negative; that the children were not particularly interested in the class; that it was conducted in a monotonous way; that when the petitioner talked to the pupils she never looked at the class; she always looked at the floor; that the manner of recitation was very mechanical; that petitioner asked questions and the students answered the questions that she asked and that there was no development of any particular subject; that there were numbers of requests for changes of schedule from petitioner's class to those of other teachers, not only by the pupils but also by their parents and that this was continuous during the time the witness was vice-principal and until petitioner was taken out of the English Department in 1946.

Frank Kellogg, vice-principal of the school, testified that he visited petitioner's classes and observed that she usually had a plan of procedure in her classroom that she seemed to carry out rather methodically; that she was not too alert to the responsiveness of the group at the time she was teaching; that he considered petitioner unsatisfactory and the basis of his opinion was personal observation plus what he had found out from talking to pupils and parents.

We conclude that there was substantial evidence to support the trial court's finding:

''That petitioner was, at the time of fixing salaries and employment of teachers for each of the school years 1947-1948 and 1948-1949, an unsatisfactory teacher, and that the action of the board of trustees in denying petitioner salary increases for the school years 1947-48 and 1948-49 was neither arbitrary, capricious nor discriminatory.''

We also conclude that under the circumstances here shown the finding of the trial court that the action of the board in determining petitioner to be unsatisfactory and leaving her salary unchanged was not an attempt to evade the provisions of the Education Code.

■ The determination of the school board in the instant action that the salaries of teachers should be fixed for the years in question in accordance with the standard of satisfactoriness seems to us to be a reasonable one and therefore conclusive upon the court, and that the schedules are not discriminatory in their application to the petitioner as there was no reduction of the salary of teachers found to be unsatisfactory and teachers in such a class were all affected equally. (*Rible* v. *Hughes, supra.*) There was no evidence introduced at the trial indicating that the policy of denying increments to unsatisfactory teachers was discriminatorily applied to her in that she was singled out among all the teachers for particular or arbitrary action.

Petitioner's contention that the board of trustees violated the constitutional guarantees against unfair discrimination and did not follow the principle of uniformity in fixing salaries is without merit as the difference between efficient and inefficient teachers affords a valid and reasonable basis for classifying tenure teachers for salary purposes and the board's action in this respect is conclusive upon the courts. (*Rible* v. *Hughes, supra,* at page 445; *County of Los Angeles* v. *Southern Cal. Tel. Co.,* 32 Cal.2d 378, 389 [196 P.2d 773].) Although tenure is conferred by statute so that once status is acquired, a teacher may not be dismissed except for cause upon notice and hearing (Ed. Code, §§ 13521-13559) tenure does not carry with it a vested right to a particular salary. (*Fidler* v. *Board of Trustees, supra; Abraham* v. *Sims, supra; Butterworth* v. *Boyd,* 12 Cal.2d 140, 152 [82 P.2d 434, 126 A.L.R. 838]; *Kacsur* v. *Board of Trustees, supra,* p. 591.)

■ Section 13802 of the Education Code vesting in the board of trustees the power to fix compensation of teachers contains no requirement for notice and hearing nor does the due process clause of the Fourteenth Amendment require notice and hearing as a condition precedent to the fixing of a teacher's compensation. We find no statutory requirement that there be some objective standard by which different teachers are rated.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied February 28, 1950, and appellant's petition for a hearing by the Supreme Court was denied March 30, 1950.