[Civ. No. 21362. Fourth Dist., Div. Two. June 3, 1980.]

ROGER MAYER et al., Plaintiffs and Respondents, v.
BOARD OF TRUSTEES OF THE LOS ALAMITOS SCHOOL
DISTRICT, Defendant and Appellant.

COUNSEL

Parker & Covert, Clayton H. Parker and Spencer E. Covert, Jr., for Defendant and Appellant.

O'Melveny & Myers, Richard N. Fisher and Catherine B. Hagen as Amici Curiae on behalf of Defendant and Appellant.

Reich, Adell, Crost & Perry and Paul Crost for Plaintiffs and Respondents.

Raymond L. Hansen and Charles R. Gustafson as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**McDANIEL, J.**—In this case we are called upon to decide the narrow and singular question of whether action taken to implement a particular school teachers' professional competence, pay-incentive provision in a collective bargaining agreement entered into between the trustees of the Los Alamitos School District, respondent below, and the Los Alamitos Education Association, the collective bargaining exclusive representative (Gov. Code, § 3540.1, subd. (e)) for the teachers of the district, violates present section 45028 of the Education Code, after its amendment as former section 13506 in 1969, and thus whether, because of such asserted violation, the district can be mandated to cease enforcing the challenged provisions of the agreement so implemented.[1]

In pertinent part, section 45028 provides that "each person employed by a district in a position requiring certification qualifications [i.e., a teacher]...shall be classified on the salary schedule on the basis of uniform allowance for years of training and years of experience." Petitioners below and respondents here are teachers employed by the school district.

After March 7, 1977, and during the principal periods of employment here involved, teachers' salaries in the district were governed by the agreement noted. Under the terms of this agreement a teacher's salary is determined by reference to a schedule which places a teacher on a certain step vertically corresponding to his or her years of experience as a teacher, and in a certain column horizontally reflecting his or her aca-

---

[1]Simultaneously and necessarily, because of the actual relief sought, we must also decide whether a preagreement policy of the district, identical in operation to that prescribed by the agreement, likewise violated section 45028.

demic attainment.[2] A newly hired teacher is granted credit for a maximum of five years of teaching experience accumulated in a different school district regardless of how many years over five that such experience represented. Also, a teacher at the highest step, i.e., step 12, in column E is eligible to receive an "anniversary" incremental increase in salary every *five* years as indicated on the schedule. Only teachers employed by the district before March 1, 1964, are eligible to receive an anniversary incremental increase while remaining in another column, i.e., in column C or D, on the schedule.

---

[2]The following salary schedule was in effect during the period with which this appeal is concerned:

LOS ALAMITOS SCHOOL DISTRICT
CERTIFICATED SALARY SCHEDULE
EFFECTIVE SEPTEMBER 1, 1976—JUNE 30, 1978

| STEP | —A— | —B— | —C— | —D— | —E— |
|---|---|---|---|---|---|
| 1 | 10161 | 10928 | 11804 | 12379 | 13338 |
| 2 | 10626 | 11393 | 12297 | 12960 | 13962 |
| 3 | 11092 | 11859 | 12790 | 13540 | 14587 |
| 4 | 11558 | 12324 | 13203 | 14121 | 15211 |
| 5 | 12023 | 12790 | 13776 | 14702 | 15835 |
| 6 | 12489 | 13256 | 14269 | 15282 | 16460 |
| 7 | | 13721 | 14762 | 15863 | 17084 |
| 8 | | 14187 | 15255 | 16443 | 17709 |
| 9 | | 14696 | 15748 | 17024 | 18333 |
| 10 | | | 16339 | 17616 | 18958 |
| 11 | | | | | 19582 |
| 12 | | | | | 20206 |
| A1 | | | *16931 | *18207 | 20831 |
| A2 | | | | | 21455 |
| A3 | | | | | 22080 |

---

*Anniversary step for those unit members hired before March 1, 1964.

Column A—Bachelor's degree and appropriate teaching credential.

Column B—Bachelor's degree plus 15 semester units of upper division or graduate work and appropriate teaching credential.

Column C—Bachelor's degree plus 30 semester units of upper division or graduate work and appropriate teaching credential.

Column D—Bachelor's degree plus 45 semester units of upper divison or graduate work and appropriate teaching credential.

Column E—Master's degree plus 30 semester units of upper division or graduate work and appropriate teaching credential. The 30 units may be taken before, after or concurrently with the Master's, but after the BA.

Otherwise, the collective bargaining agreement provides that at the end of each school year a teacher shall be advanced to the next step on the salary schedule *provided he or she has received a satisfactory performance rating.*[3] If the rating is unsatisfactory, the teacher is denied a salary increase for the ensuing year.

The performance rating is accomplished on a form filled out each year by the principal at the school where the teacher is assigned. On this form the principal evaluates the teacher's performance in seven areas: (1) professional attributes, attitudes and conduct; (2) professional relationships with pupils, parents and colleagues; (3) professional skills; (4) preparation and planning; (5) learning environment; (6) related professional activities (e.g., PTA, intramural coaching, professional associations); and (7) pupil progress. The principal rates the teacher as satisfactory or unsatisfactory in each area. Under the terms of the collective bargaining agreement, that evaluation is not reviewable.[4] As noted, if the teacher is rated as unsatisfactory in any area, he or she is denied a salary increase for the ensuing year.

In 1975, petitioner Mayer, who taught grades five and six, received the salary consistent with step 2 of column D of the salary schedule. During the 1975-1976 school year he was rated unsatisfactory in area (1): professional attributes, attitudes and conduct. The principal concluded that Mayer had failed to demonstrate appropriate professional judgment and occasionally had engaged in emotional outbursts. As a consequence of this rating, Mayer was not advanced to step 3 in column D on the salary schedule.[5]

---

[3]The actual provision reads, "Salary increment [step advances] increases will be granted to those certificated unit members both full and half-time who have received a satisfactory performance evaluation." (Agreement, art. XV, E.8.)

[4]However, before the performance rating is submitted to the district, the principal must discuss the rating with the teacher, and the teacher is entitled to append to the rating any comments or observations which he or she might have. It is also conceded by the teacher petitioners in their brief that teachers receiving unsatisfactory evaluations have a forum for challenging the substance of such evaluations, i.e., before the commission on professional competence.

[5]Finding No. 5 states, "[b]etween 1974 and March, 1977, respondent maintained in effect a policy which provided as follows: Certificated employees receiving an unsatisfactory evaluation will be required to participate in specific inservice training activities designated by the District. Failure to participate successfully in such training will result in loss of the salary increment for the following years' service." In other words, the district, as a matter of employment policy, before March 7, 1977, followed a practice similar to that negotiated into the collective bargaining agreement of that date.

At the end of the 1976-1977 school year, Mayer again received an unsatisfactory performance rating, this time in area (3): professional skills; area (4): preparation and planning; as well as (1): professional attributes, attitudes and conduct. The principal stated that Mayer lacked maturity, had failed to teach all areas of the curriculum, had not understood the subject matter and content areas in which he was teaching, had failed to follow district policy in his manner of teaching certain subjects, and had not maintained adequate records of pupil progress. Thus, Mayer remained again at step 2 in column D of the salary schedule for the school year 1977-1978.

The following year, Mayer was transferred to a different elementary school. At the end of that year, he received a satisfactory performance rating and advanced to step 3 in column D on the salary schedule.

Petitioner King, who taught instrumental music at the junior high school level, had advanced to step 12 of column E on the salary schedule. He was expecting to receive his first anniversary incremental salary increase at the end of the 1976-1977 school year. However, during that year, King was rated as unsatisfactory in area (1): professional attributes, attitudes and conduct; (3): professional skills; and (4): preparation and planning. The principal who rated King noted that the teacher had ignored administrative directives, had exhibited lapses of professional judgment, and had failed to make master plans or pupil lesson plans. As a result of this rating, King did not receive credit for that year, and did not receive his anniversary incremental salary increase. At the end of the 1977-1978 school year, however, King was given a satisfactory performance rating.

· Petitioner Mayer attempted to protest his failure to receive a salary increase for the periods noted by resort to a grievance procedure which had been in effect before the adoption of the collective bargaining agreement. As already noted, no such procedure is provided for in the agreement. In any event, his grievance was denied by the trustees.

In June of 1978, Mayer, King, and a third teacher petitioned the superior court for a writ of mandate which if granted would require the board to pay to them the difference between the salary they would have earned, had they received satisfactory performance ratings, and the salary they actually received.[6] They also prayed that the district be

---

[6]The third teacher was dismissed from the action because she resigned from the district. Both she and King stated in the petition for writ of mandate that they did not

ordered to cease and desist from enforcing any policy whereby salary increases were conditioned upon the teachers' receipt of satisfactory performance ratings.

In their answer to the petition for writ of mandate the trustees, among other things, pleaded as an affirmative defense that the petition "fails to state facts sufficient to constitute a cause of action against Respondent."

At the hearing on the petition, various declarations were received as direct evidence. After the hearing, the court issued a memorandum of decision in which it found the collective bargaining agreement's condition of satisfactory performance to qualify for pay increases to be in violation of Education Code section 45028, and thus invalid. The district requested findings of fact and conclusions of law. Such findings were made, objections to them heard, and revised findings of fact and conclusions of law filed. Judgment was entered for the petitioners, and a peremptory writ of mandate served upon the district. The district filed a return to the peremptory writ of mandate stating that it was appealing the adverse judgment. This appeal followed.

ISSUES AND DISCUSSION

The appellants make three assignments of error. Because of our disposition of the principal issue, i.e., whether the professional incentive provision of the collective bargaining agreement noted and the district's equivalent preagreement policy violate Education Code section 45028, we do not consider: (1) the appellants' contention that the Los Alamitos Education Association, on behalf of the teachers, had waived their right to argue that the salary increase procedure violated state law; or (2) that the action must be returned to the trial court because of the failure to join an indispensable party, namely, the Los Alamitos Education Association which represented the teachers' bargaining unit in negotiating the agreement.

I

Before the amendment of section 13506 (now § 45028) in 1969, to be effective July 1, 1970, it read as here pertinent that "[u]niform allowance may be made in any schedule of salaries for years of training

---

utilize the grievance procedures because Mayer's experiences demonstrated the futility of that course of action.

and for years of service."[7] Under the guidance of that language the decisions had upheld the actions by school districts in adopting a wide variety of differential experience credits in fixing salaries for their teachers where such differentials were adjudged as "reasonable." The leading case relied upon for this kind of disposition is *Fry* v. *Board of Education* (1941) 17 Cal.2d 753 [112 P.2d 229]. As noted in *Fry*, this statutory language, while "enjoin[ing] [upon a school district], within reasonable limits, the principle of uniformity of treatment as to salary for those performing like services with like experience...[did] not prevent [a school district] from making reasonable classifications." (*Id.* at pp. 757-758.) Such classifications have been upheld unless they were "arbitrary, discriminatory or unreasonable." (*Rible* v. *Hughes* (1944) 24 Cal.2d 437, 444 [150 P.2d 455, 154 A.L.R. 137].)

A latter day case which pointedly tested this principle is *Lawe* v. *El Monte School Dist.* (1968) 267 Cal.App.2d 20 [72 Cal.Rptr. 554]. In that case, the plaintiff, a permanent teacher, had been employed by the district for five years when he was granted a one-year leave of absence that he might teach overseas. During the period that plaintiff was on this leave of absence, the district adopted a policy of awarding salary credit for outside experience for the purpose of advancing a teacher only as high as the fourth step on the salary scale, a step plaintiff had already reached before his leave of absence. As a consequence of this combination of events, two other teachers, who had not reached the fourth step before taking leave of absence for outside teaching, *were* awarded credit for time thus spent, but plaintiff was not. The litigation that followed sought to equalize the allegedly discriminatory treatment of the plaintiff by allowing him salary scale credit for his teaching while on leave of absence.

The effort was unsuccessful, and the appellate opinion recited: "It is within the province of the governing board of a school district to determine the extent to which credit is to be given for teaching experience outside the district (see *Fry* v. *Board of Education,*...) and a court is not free to interfere with such determination if the policy is reasonable in nature and is applied fairly and without discrimination. [Citations.] [¶] In the present case there was no abuse of discretion on the part of the governing board of the school district in not permitting the use of

---

[7]The language of section 13506 in the Education Code of 1959 before its amendment in 1969 was derived from section 13805 of the Education Code of 1943. The language of section 13805 was, in turn, taken from section 5.734 of the School Code of 1929. For clarity, when the quoted statutory language is referred to, it will be cited as section 13506.

approved outside experience as a basis for advancement to a step higher than the fourth step. Such a limitation tended to stabilize the continuity of service within the district of experienced teachers and tended to confine the resort to outside teaching experience to those less experienced teachers who had more to gain thereby. Moreover, the prospect of credit for such outside experience could serve as a means of attracting teachers new in the profession to the El Monte School District. The record shows that such policy was applied fairly and without discrimination." (*Lawe* v. *El Monte School Dist., supra,* 267 Cal.App.2d 20, 22-23.)

More recent cases where differential treatments of teachers were found to be reasonable are *Lompoc Federation of Teachers* v. *Lompoc Unified Sch. Dist.* (1976) 58 Cal.App.3d 701 [130 Cal.Rptr. 70], and *California Sch. Employees Assn.* v. *Coachella Valley Unified Sch. Dist.* (1977) 65 Cal.App.3d 913 [135 Cal.Rptr. 630]. In the latter case, one decided by this court, we did not see that the amendment of section 13506 in any way operated to render obsolete the holdings in *Fry* and *Lawe* or in *Sayre* v. *Board of Trustees* (1970) 9 Cal.App.3d 488 [88 Cal.Rptr. 355], a case which also relied upon *Fry* and *Lawe* in upholding the right of a school district to establish a higher maximum credit for previous experience for incoming teachers than those already employed, this to facilitate recruitment of new teachers.

## II

However, recently cutting across this view of the effect of the amendment to section 13506 is the Supreme Court decision in *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650 [147 Cal.Rptr. 359, 580 P.2d 1155]. In that case the district at one time had followed a policy of awarding prior experience credit to incoming teachers only for public school teaching and excluding therefrom any recognition of experience in private accredited schools. Thereafter, the policy was changed to recognize private school experience for incoming teachers, whereupon a teacher earlier employed under the old policy requested that his private school teaching experience be recognized for the purpose of placing him at a higher step on the salary schedule. When the district refused, litigation followed, and the Supreme Court eventually affirmed the trial court's issuance of a writ of mandate which compelled the district to recognize the complaining teacher's earlier private school teaching experience for salary purposes.

After reviewing the cases decided under the old langauge of section 13506, much as has been done above, the court in *Palos Verdes* observed with reference to the impact of this amendment that "[t]he intent of the Legislature in making this change, as expressed in section 3 of the operative legislation, is 'to establish a uniform base salary schedule in each school district.' [Fn. omitted.] Considering these elements—i.e., the express change of language and the Legislature's own statement of intent—in the decisional context of the enactment, we must conclude that one of the lawmaker's aims in enacting the new section was to break away from past reliance on judicial assessments of 'reasonableness' in the classification of teachers and establish a more certain standard of its own. Thus the new statute, as we read it, had the twofold purpose of (1) *requiring* that teachers be classified for salary purposes, and (2) establishing that such classification proceed *wholly* on a uniform basis of years of training and years of experience. One effect of this action was to eliminate the possibility of future results of the type exemplified by *Lawe*, by which a district, while granting a given maximum of credit for outside experience, makes such credit available on less than a uniform basis to all teachers. [Fn. omitted.]" (*Id.* at pp. 660-661, original italics.)

The high court then went on to ruminate over the holdings in *Sayre, Fry* and *Lawe* and observed, "[w]hile we are satisfied that the *Sayre* case may represent a proper application of the pre-1970 version of section 13506 as construed in *Fry* and *Lawe*, it is our view, explained above, that the amended version of the statute will tolerate no similar application. We have concluded, in short, that under the amended version of the statute [teachers] not occupying administrative or supervisory positions are to be classified for salary purposes strictly according to years of training and experience up to the applicable maximum...—and that the principle of 'reasonable classification' may no longer be employed in justification of variations from such uniform treatment on the basis of considerations such as 'stabiliz[ing] continuity of service,' 'attracting new teachers' (*Lawe, supra,* 267 Cal.App.2d at p. 23), or 'policy changes necessitated by employment needs' (*Sayre, supra,* 9 Cal.App.3d at p. 491)." (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist., supra,* 21 Cal.3d 650, 662.)

At the conclusion of the majority opinion in *Palos Verdes, Lompoc* and *California Sch. Employees Assn.* were disapproved insofar as they are inconsistent with the decision in *Palos Verdes.*

### III

With this precedential background and current statutory interpretation at hand, we now turn to the express decisional task presented by this appeal. The trial court in its memorandum of intended decision was specific in explaining its ruling in favor of petitioners, stating "...this Court finds that the statute controls the contract and policy. The subjective element in performance evaluations and the *possibility* of prejudice and favoritism in this process appears to be in the class of problems sought to be resolved by Section 45028 [formerly section 13506] and its interpretation in *Palos Verdes*." (Italics added.)

This also is the main thrust of the petitioners' argument, namely that "[t]he district's salary policies are subject to favoritism and prejudice, and thus are contrary to § 45028." In other words, if we understand correctly the position taken by the trial court, as echoed by petitioners on appeal, it is that a lack of uniformity in classifying teachers on the basis of experience *will develop* because of the assumed invitation to discriminate surmised to be inherent in such procedure. Specifically, petitioners argue it will lead to prejudicial and abusive and arbitrary misuse of the performance rating procedure and hence result in differential salaries for those having like calendar experience and equal professional competence.

If that is the argument, the record in our view does not present the question to which such an argument is directed. More explicitly, there is not the remotest suggestion, either in the petition or otherwise, that the unsatisfactory evaluations were improper, unfair, discriminatory, erroneous, or the result of favoritism. The contention is that such discriminatory evaluations *might* and probably will occur.

In other words, we are asked to measure the statutory compliance of the district action taken pursuant to this term of the collective bargaining agreement and the like practice which preceded it by first accepting a factual position which not only goes outside the record but also flies in the face of section 664 of the Evidence Code which provides that, "[i]t is presumed that official duty has been regularly performed."

In *Palos Verdes* itself it was acknowledged that a school district could exercise an independent discretion in placing a maximum on the amount of prior service in employment outside the district for which

salary credit would be recognized.[8] Earlier we have quoted from *Palos Verdes* that "[o]ne effect of this action was to eliminate the possibility of future results of the type exemplified by *Lawe*, by which a district, while granting a given maximum of credit for outside experience, makes such credit available on less than a uniform basis to all teachers." (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist., supra,* 21 Cal.3d 650, 661.) Where this langauge appears there is a footnote which recites, "[t]o be distinguished in this respect, we believe, is the matter of maximum credit itself. A rule providing for outside experience credit up to five years may indeed have the effect of 'depriving' a teacher having six years outside experience of a year of credit. This, however, is a 'uniform allowance...for...years of experience' within the meaning of section 13506, for under it all teachers receive credit for prior experience up to the stated maximum. In the situation exemplified in *Lawe,* on the other hand, a teacher is precluded from receiving credit for a year of outside experience within the allowed maximum solely due to this seniority within the system. This, in our view, does not provide a 'uniform allowance...for...years of experience.' [¶] By the same token, *we do not read the new statute to preclude a district from making reasonable determinations as to the level and quality of 'training' or 'experience' which is to qualify for a particular level of credit within its boundaries.* Once a district has made such determinations, however, the new statute requires that the resultant standards be applied uniformly to all teachers in the district." (*Id.* at p. 661, fn. 6, italics added.)

■ From this we conclude that a school district under amended section 13506 as interpreted by our Supreme Court in *Palos Verdes* is yet free to *define* "experience" for purposes of its salary schedule *provided that what is so defined applies uniformly to all teachers employed by the district.* This is precisely what this provision of the collective bargaining agreement does. It defines a year of experience within the district's employment as one for which the teacher has received a satisfactory evaluation, *and the provision applies to all teachers alike.*

In other words, the classification on the basis of experience as originally made by the district under the agreement was and remains uniform, for it is clear that petitioners would not have had any reason

---

[8]Such a maximum is actually present in the agreement here, i.e., it provides for a maximum of five years' credit for newly hired teachers, *regardless* of the actual teaching experience over five years.

to initiate this litigation had they regularly received *satisfactory* evaluations. The reality of the matter, as noted, is that the district initially classified each teacher, including petitioners, "on the salary schedule on the basis of uniform allowance for years of training and years of experience." (Ed. Code, § 45028.) Therefore, if petitioners have not been receiving the salary they would have received otherwise, such circumstance is because of the unsatisfactory evaluations and is *not* because of any impermissible classification made by the district. In other words, such result is wholly the product of the petitioners' own ineffective professional efforts. Again, had petitioners performed their duties satisfactorily, they would have moved ahead on the salary schedule at the same rate as their colleagues. With this the state of the record, we fail to see what action the district had taken to "classify" the petitioners in violation of the statute. Moreover, the key fact pervading the issue is that the incentive pay plan applies uniformly to all teachers employed by the district.

## IV

Nevertheless, on this record, where there is not the slightest shred of evidence that the unsatisfactory evaluations were not based upon fairly administered professional judgments and notwithstanding section 664 of the Evidence Code as it applies to the actions of the administrators who evaluated petitioners, they would yet have us reward them with equivalent experience classification for their substandard efforts under the guise of a picturesque view of the record combined with a misconceived application of section 13506.

We say "misconceived" advisedly, for *Palos Verdes* was explicit in noting that the interpretation it placed upon section 13506 was in no way intended to be construed as precluding a school district from adopting pay incentive programs. In the course of discussing the amendment to section 13506, the opinion states, "[t]he Legislature also provided, in section 3 of the amending act (not appearing in the text of the new Education Code section), a statement of its intent: 'It is the intent of the Legislature in amending Section 13506 of the Education Code as provided in Section 1 of this act to establish *a uniform base salary schedule* in each school district. It is not the intent of the Legislature in this act to limit a school district governing board in developing *pay incentive programs*.' (Stats. 1969, ch. 1314, § 3, p. 2651.) (Italics added.)" (*Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist., supra*, 21 Cal.3d 650, 658.)

Further on in the *Palos Verdes* opinion, the court says, "[t]hus, as of its effective date the new statute provides 'each person employed by a district in a position requiring certification qualifications...*shall be classified* on the salary schedule *on the basis of* uniform allowance for years of training and years of experience.' (Italics added.) The intent of the Legislature in making this change, as expressed in section 3 of the operative legislation is 'to establish a uniform base salary schedule in each school district.'" (*Id.* at p. 660.) At that point, after expressly quoting the amended statute itself, the court dropped a footnote which recites, "[a]s indicated above, the Legislature also stated in section 3 that it was *not* its intent 'to limit a school district governing board in developing pay-incentive programs.'" (*Id.* at p. 660, fn. 5, original italics.)

The provision under attack as violative of the statute is a prototype example of a pay incentive program as it applies to step or vertical advancement. These teachers, acting through their exclusive bargaining agent, and the trustees reached agreement after negotiations that some device should be implemented which was designed to encourage professional excellence in the classroom. What better way to accomplish this than to provide that unsatisfactory service would result in a failure to accrue a year of experience for salary schedule purposes? There is nothing novel in this concept. So-called fitness reports and job performance evaluations are a widespread device utilized in both the public and private sector to encourage job advancement based on merit as contrasted to archaic and stultifying systems which award advancement solely on the basis of the passage of time.

In sum, then, the alleged grievances in the form of a denial of salary advancement which petitioners have attempted to assert as a violation of section 13506 by the district is not the consequence of any failure to classify petitioners and their colleagues on the basis of a uniform allowance for years of training and years of experience, but is rather the consequence of petitioners' own failures to demonstrate professional competence. In this respect, we must emphasize again that on this record, and especially in terms of the petition for a writ of mandate, it must be accepted as true that petitioners' unsatisfactory ratings were justified on the facts of their own behavior.

## V

It has been suggested, however, that the "pay incentive programs" references in *Palos Verdes* were intended to mean only those dealing

with incentives for movement horizontally on the salary scale, i.e., only those incentives leading to an improvement in classification based on *training.* The answer to that suggestion is that it has long since been decided in this state that school districts have the authority to adopt personnel policies which reward effective and efficient classroom performance of their teachers and which withhold such rewards for the ineffective and inefficient. Such holdings are significant here because they have also recognized, in upholding such policies, *even before* the amendment of section 13506, the legal requirement for uniform classification of teachers for salary purposes on the basis of *experience.* As we shall demonstrate, these holdings have not only not been invalidated by the *Palos Verdes* interpretation of the effect of the amended section 13506, but have been confirmed by it.

This brings us to *Heinlein* v. *Anaheim Union H. S. Dist.* (1950) 96 Cal.App.2d 19 [214 P.2d 536]. In that case the petitioner was classified by the district as an "unsatisfactory" teacher for a variety of reasons as a result of which she lost her annual increase in salary. She petitioned for a writ of mandate to compel the district to recognize her as a "satisfactory employee," alleging that the rating she had received was discriminatory, arbitrary and unreasonable. (*Id.* at p. 20.)

In both the trial court and on appeal, the petitioner contended that the district had violated constitutional guarantees against unfair discrimination and had not followed the established principle of uniformity in fixing salaries. This led the court to a reference to section 13802 of the Education Code[9] and cases construing it, including *Rible. Heinlein* then quotes *Rible,* "[a]ccording to these decisions, then, a board of education may exercise its discretion in adopting salary schedules fixing the compensation to be paid to permanent teachers although (1) the schedule must be adopted prior to the beginning of the school year; (2) *any allowance based upon years of training and experience must be uniform,* and subject to reasonable classification; and (3) the schedule must not be arbitrary, discriminatory or unreasonable." (*Rible* v. *Hughes, supra,* 24 Cal.2d 437, 444, italics added.)

Against this background, the *Heinlein* court framed the issue before it as "whether the action of the school board in denying petitioner a sal-

---

[9]Section 13802 then provided that the governing body of a school district shall fix and order paid the compensation of persons in public school service.

ary increase for the school years in controversy was, under the circumstances presented, a reasonable exercise of its power to fix teachers' compensation and whether a board of trustees of a school district may lawfully increase the salary of an efficient teacher while permitting the salary of an inefficient teacher of like training and experience to remain unchanged." (*Heinlein* v. *Anaheim Union H. S. Dist., supra,* 96 Cal.App.2d 19, 22.)

To resolve this issue the *Heinlein* court turned back to *Kacsur* v. *Board of Trustees* (1941) 18 Cal.2d 586 [116 P.2d 593]. *Kacsur* presented a contest between two teachers and the South Whittier Elementary School District. Appellant Hill had been a teacher in the district beginning July 1, 1927; appellant Kacsur since July 1, 1928. In 1931, both became "permanent" teachers of the district and were the only two such teachers out of a total of 18 full-time faculty at the time of the litigation. For the year 1937-1938 both received $1,600 per year, as did a Miss Harrington who had taught in the district for only nine years before that school year and had not been classified as a permanent teacher.

In May of 1938, Hill and Kacsur were tendered contracts for $1,325 for the coming year, $5 over the minimum fixed by section 5.751 of the School Code. Simultaneously, the school board abolished the salary schedule and set salaries for the other teachers at figures comparable to what the schedule would have otherwise provided for. In particular, Miss Harrington was tendered a contract for $1,600 for the coming year 1938-1939. Otherwise, Kacsur was reassigned to "home teaching" of those pupils who, for a variety of reasons, could not get to school. She was provided no expense allowance for her travel to the homes involved.

The two appellants accepted the employment but by petitions for writs of mandate sought to compel the district to undo the allegedly discriminatory treatment. The trial court denied both petitions, but, upon a combined appeal to the Supreme Court, it reversed. The district took the position that discrimination and unreasonableness could not be shown by comparison of salaries of former years with salaries of other teachers for the reason that each teacher is an individual employee of the district and each teacher's salary is fixed under a one-year contract distinct from any past or future contract. (*Kacsur* v. *Board of Trustees, supra,* 18 Cal.2d 586, 591.)

The Supreme Court rejected this argument. It found the differential treatment to be discriminatory and ordered the two appellants to be paid for 1938-1939 at least at the rate of $1,600. In reaching this result, the *Kacsur* court said, "[t]hat there must be some degree of uniformity was recently recognized by this court in the case of *Fry* v. *Board of Education*, 17 Cal. (2d) 753..., wherein it is stated at p. 757: "'It must be conceded that, within the limits fixed by the School Code, the Board has discretionary control over the salaries of teachers. (Citing cases.) However, it must also be conceded that the legislature had enjoined on such Boards, within reasonable limits, the principle of uniformity of treatment as to salary for those performing like services with like experience....'"" (*Id.* at p. 592.)

We take this language to mean that the Supreme Court interpreted the legislation in effect at that time as enjoining upon school districts the principle of uniformity of salary treatment for those performing like services with like experience. While recognizing this legislative mandate, the *Kacsur* court also noted the judicially carved latitude accorded school districts by *Fry*, a latitude described therein as "within reasonable limits." (*Kacsur* v. *Board of Trustees, supra,* 18 Cal.2d 586, 592.)

What is particularly significant to us here is the amplifying discussion of the *Kacsur* court with reference to the required uniformity of treatment, within reasonable limits, of teachers with like experience. It was this discussion which the *Heinlein* court also found persuasive. The *Kacsur* court said that "[i]t is quite possible that a situation might exist in which one of two teachers of similar experience and service might be not only more capable, but also more industrious and willing than the other, who although sufficiently competent to prohibit dismissal, might be somewhat indolent and noncooperative. In such a situation the school board should be permitted to exercise its reasonable discretion in raising the salary of the industrious teacher as a reward for her good work without at the same time having to increase the salary of the underserving teacher." (*Kacsur* v. *Board of Trustees, supra,* 18 Cal.2d 586, 594.)

This observation was immediately preceded by the statement that "we are not prepared to say that in no case may a school board offer evidence of incompetency or inefficiency as justification for a reduction in salary or a discrepancy in salary between two teachers of the same years of experience and service" (*Id..* at p. 594.) This is precisely the

case now before us, and so the focus of inquiry at this point in the analysis is whether that stated position represented a characterization of the allowance of differential treatment based on professional competence as the kind allowed "within reasonable limits" per *Fry* or whether such position derived from a separate and distinct rationale.

The *Kacsur* court provides an explicit answer to the inquiry noted. It goes on to say, after its commentary in the first of the two items quoted above, that "[w]hat has just been stated *here* [in *Kacsur* about differential salary treatment based on professional competence] does not conflict with the previously quoted 'uniformity' statement in the case of *Fry* v. *Board of Education, supra* [17 Cal.2d at pp. 757-758]. The 'within reasonable limits' phrase was no doubt inserted in [*Fry*] so that a school board would *still retain* some discretion [not involving professional competence] as to the fixing of salaries even as to teachers performing like services with like experience." (*Kacsur* v. *Board of Trustees, supra*, 18 Cal.2d 586, 594-595, italics added.) If the *Kacsur* observation recognizing the propriety of providing for differential salaries among teachers based upon professional competence had been predicated on the "within reasonable limits" *Fry* rule, the latter language quoted would have been quite unnecessary. Thus, what we conclude from all this is that the differential treatment of salaries based upon professional competence is *not* the kind of school district action contemplated by the *Fry* interpretation of then section 13506.

Based upon the proposition contained in the *Kacsur* language quoted, *Heinlein* ruled in favor of the school district. That ruling, relying upon the *Kacsur* dicta, represented a holding that despite the legislative requirement of uniformity of salary treatment of teachers based upon their years of experience, a school district, quite apart from *Fry*, could yet adopt differential salaries based upon professional competence or the lack of it.

## VI

The key question to be confronted at this juncture of the analysis is whether the amendment to section 13506, now section 45028, operated in any way, as interpreted by *Palos Verdes*, to dilute or render no longer valid the holding in *Heinlein*. As already explained, the pivotal proposition which *Kacsur* suggested and which *Heinlein* confirmed is that the rating or evaluation of a teacher's performance as unsatisfac-

tory, resulting in a denial of salary increase, is *not* the kind or type of classification based on experience which is contemplated by amended section 13506. We observe thusly and reiterate that even back in 1941 the *Kacsur* court was explicit in stating that the authority of a school district to reward conscientious teachers with incentive salary increases could be recognized only if such system of rewards did *not* conflict with the requirement of uniformity in the district's fixing of teachers' salaries on the basis of training and experience. (*Kacsur* v. *Board of Trustees, supra,* 18 Cal.2d 586, 592.) *Heinlein* was equally explicit. In its decision, it recognized, in fixing teachers' salaries, that any allowance based upon years of training and experience must be uniform, citing *Rible* v. *Hughes supra,* 24 Cal.2d 437, 444. Nevertheless, while recognizing this "uniformity" requirement it yet countenanced an incentive system with reference to the individual on-the-job performance of the district's teachers. (*Heinlein* v. *Anaheim Union H. S. Dist., supra,* 96 Cal.App.2d 19, 22, 24-25.)

*Kacsur* pointed the way to this distinction in its comments on the *Fry* language we have already quoted both early in this opinion and just above. After noting that the incentive policy which it upheld did not conflict with the previously quoted uniformity statement in *Fry, Kacsur* went on to note that the "within reasonable limits" phrase was no doubt inserted to afford the district some discretion as to the fixing of salaries even as to teachers performing like services with like experience, i.e., without regard to any incentive program. (*Kacsur* v. *Board of Trustees, supra,* 18 Cal.2d 586, 594-595.)

It is from this distinction which *Kacsur* draws in the *Fry* language and which is applied in *Heinlein* that we conclude, now in view of *Palos Verdes,* that the amendment of section 13506 *did operate* to strike down the latter type district actions while not the former. In other words, while the new mandate of section 13506 as amended and as interpreted by *Palos Verdes* clearly invalidates that part of the holding in *Fry* which stated that the limitation in the School Code as it then read "does not ['within reasonable limits'] prevent the Board from making reasonable classifications" (*Fry* v. *Board of Education, supra,* 17 Cal.2d 753, 757-758), it is our view that the new mandate operates also to affirm the view expressed in *Fry* "that the legislature had enjoined [upon] such Boards,...the principle of uniformity of treatment as to salary for those performing like services with like experience" (*id.* at p. 757), a proposition which *Heinlein* recognized as wholly compatible

with an incentive salary program geared to teacher performance in the classroom.

The foregoing reconciliation of the *Heinlein* holding and the *Kacsur* dicta with the amended version of section 13506 is implicitly confirmed by *Palos Verdes*. As noted, while *Palos Verdes* interpreted the amended wording of section 13506 to foreclose any differential classification by school districts of the kind attempted in that case as well as that previously upheld in *Lompoc* and *California Sch. Employees Assn.*, it expressly interpreted the amended wording as not intended to foreclose a district's authority to implement pay incentive programs as being in conflict with the required uniformity of classification. Although *Palos Verdes* did not expressly discuss pay incentive programs as they apply to experience, we are satisfied that the "uniformity" conditions for such programs recognized by *Heinlein* fully comport with those which *Palos Verdes* acted to impose on school districts in any actions to classify teachers on the basis of training and experience.

## VII

To summarize, on the record before us, the district, both before and after the collective bargaining agreement, followed a practice of classifying all teachers uniformly on the basis of years of training and years of experience (see fn. 2 *ante*). Thereafter, whether a given teacher moved up the salary scale depended entirely on his or her professional competence, i.e., a pay incentive program. This program applied to all teachers alike. Accordingly, based upon the dicta of *Kacsur*, followed by the holding in *Heinlein*, and confirmed implicitly by certain language in *Palos Verdes*, we conclude, in harmony with those authorities, that the consequence of a pay incentive program, if applied across the board to all teachers, is not to establish a differential treatment of teachers with like experience which the amendment of section 13506 was designed to eliminate. In short, the *Heinlein* holding that pay incentive programs do *not* contravene the requirement of uniform classification of teachers on the basis of years of experience is a viable precedent today and was not invalidated but actually confirmed by the *Palos Verdes* interpretation of the effect of section 13506 as amended.

We see it that the district's procedure for awarding salary increases based on professional excellence is not only commendable but is actually consistent with Education Code section 45028. The base salary for

each teacher is governed by the two required considerations: experience and education. By negotiated agreement, the trustees and the education association together determined, as is permissible under *Palos Verdes*, that the "level and quality of. . . 'experience' which is to qualify for a particular level of credit" (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist., supra*, 21 Cal.3d 650, 661, fn. 6) is a year in which the teacher performed satisfactorily. Any "experience" short of that level is to be deemed insufficient to justify advancement to the next experience step, just as for example, any college course taken for which the grade was lower than a B was insufficient to count as additional education justifying advancement to the next column.[10] Because this provision applies to all alike, we hold that the district's pay incentive program, as derived from the collective bargaining agreement, does not violate Education Code section 45028.

Nevertheless, much has been made in their brief by petitioners of the probabilities of abuse claimed to be inherent in the subjective evaluation process. Such arguments we are in no position to discount or accept. There is nothing in the record to demonstrate that there is or is not such a probability. It amounts to speculation, and it attempts to present an issue outside the record in terms of predicted future events. In this connection, we have necessarily decided the case predicated on the assumption that petitioners were fairly and equitably evaluated as unsatisfactory for the periods in question. The true issue then is whether, notwithstanding their unsatisfactory performance, they were yet subjected to an impermissible classification. What has been said above in our view fully answers that question. They were not impermissibly classified.

## VIII

It remains to comment on the dissent. It chooses to lump *Fry* and *Kacsur* together and treat the latter as also involving an application of the latitude accorded school districts before the amendment to section 13506 to act "within reasonable limits" in classifying for salary purposes teachers who have like experience. Actually, *Kacsur struck down* as arbitrary action by a school district to reduce the salaries of two permanent teachers, where there was no evidence of professional incompetence, while yet paying a higher salary to another teacher with less

---

[10]This requirement is set out on page 58 of the collective bargaining agreement.

experience. As we analyzed the dicta in *Kacsur* and the holding in *Heinlein* which relied upon that dicta, it is clear to us that both were announced quite apart from the holding in *Fry* in terms of its interpretation of then section 13506.

Thus, our departure from the dissent is traceable to our differing views on the basis for the *Kacsur* dicta and the *Heinlein* holding. It is because of the apparent rationale of those pronouncements that we are satisfied that the implementation of pay incentive programs based upon professional competence of teachers was not in the slightest affected by the amendment of section 13506 of the Education Code, now section 45028. The decision in *Palos Verdes* in two places expressly says as much. In other words, the differential treatment "within reasonable limits" of teachers with like experience struck down by the amendment of the statute represented a new proscription of types and varieties of school district action not here involved. The *Palos Verdes* court refers specifically to two kinds of such action it sees as now outlawed by amended section 13506, i.e., those represented by *Lawe* and *Sayre* and by *Lompoc* and *California Sch. Employees Assn.* which were expressly overruled.

It is clear to us, if scheduling differential salaries, based upon professional competence, for teachers of like experience represented the kind of school district action now proscribed by amended section 13506, that *Palos Verdes* would have overruled *Heinlein* along with the other cases which it did. However, it did not, and we take that as a further declaration, beyond the two expressly stated in *Palos Verdes*, that the countenance of pay incentive plans based upon professional competence of the kind instituted by the district here under the collective bargaining agreement is quite outside the legislative objective underlying the amendment to section 13506.

### DISPOSITION

Because the petition for writ of mandate fails to state a cause of action, the judgment is reversed.

Kaufman, J., concurred.

KAUFMAN, J.—I fully concur in the majority opinion. I add, however, that I find nothing in the statute or the cases or the requirement for

uniform treatment that requires a district to treat as a year of "experience" a year of unsatisfactory experience. Salary increases are based on experience because it is presumed that the ability to teach effectively increases with experience. However, a year of unsatisfactory experience need not be presumed to increase teaching ability or effectiveness. Unsatisfactory teaching no matter how long continued will not increase teaching ability or effectiveness.

It also seems to me that the construction of the statute so as to deny the governing boards of districts the right to make rational distinctions would raise questions as to the validity of the statute.

**TAMURA, Acting P. J.**—I respectfully dissent. The majority's decision rests on a strained reading of two footnotes in *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* 21 Cal.3d 650 [147 Cal.Rptr. 359, 580 P.2d 1155], and a misplaced reliance on decisions which were legislatively jettisoned by the 1969 amendment to former Education Code section 13506 (now § 45028).

The pre-1969 version of section 13506 was interpreted in *Fry* v. *Board of Education* (1941) 17 Cal.2d 753 [112 P.2d 229], as requiring school boards to observe "within reasonable limits" the principle of uniformity of salaries for teachers performing like services with like experience but not to preclude boards from making "reasonable classifications." (*Id.*, at pp. 757-758.) Shortly after *Fry*, the Supreme Court in *Kacsur* v. *Board of Trustees* (1941) 18 Cal.2d 586 [116 P.2d 593], explained that the phrase "within reasonable limits" was used in *Fry* "so that a school board would still retain some discretion as to the fixing of salaries even as to teachers performing like services with like experience." (*Id.*, at pp. 594-595.) The *Fry-Kacsur* progeny upheld a number of "reasonable" variations from the uniformity principle.

In 1969 the Legislature revised section 13506. (Stats. 1969, ch. 1314, § 1, p. 2651.) The effect to be given those revisions was the issue in *Palos Verdes*. The high court reviewed the pre-1969 decisional background of the section, analyzed the language changes made by the 1969 amendment and concluded "that one of the lawmakers' aims in enacting the new section was to break away from past reliance on judicial assessments of 'reasonableness' in the classification of teachers and establish a more certain standard of its own." (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist., supra,* 21 Cal.3d 650, 661.)

Then in precise language, the court declared that the "new statute,... had the twofold purpose of (1) *requiring* that teachers be classified for salary purposes, and (2) establishing that such classification proceed *wholly* on a uniform basis of years of training and years of experience." (Original italics; *id.*) Later in its opinion, the court reemphasized its conclusion that under the section as amended teachers "are to be classified for salary purposes *strictly* according to years of training and experience...—and that the principle of 'reasonable classification' may no longer be employed in justification of variations from such uniform treatment on the basis of considerations such as 'stabiliz[ing] continuity of service,' 'attracting new teachers' [citation], or 'policy changes necessitated by employment needs' [citation]." (Italics supplied; *id.*, at p. 662.) The *Palos Verdes* majority specifically rejected the dissenters' view that the new statute "'had no effect on prior judicial authority permitting "reasonable" variations from strict "uniformity" in training-experience classifications.'" (*Id.*, at pp. 663-664.)

Thus, there can be no doubt that amended section 13506 as interpreted by the Supreme Court requires teacher classification for salary purposes to be *wholly* and *strictly* on a uniform basis of training and experience. An interpretation placed upon a statute by a court of last resort becomes a part of the statute. (*People* v. *Curtis* (1969) 70 Cal.2d 347, 352, fn. 2 [74 Cal.Rptr. 713, 450 P.2d 33]; *People* v. *Hallner* (1954) 43 Cal.2d 715, 721 [277 P.2d 393].) Thus, under the current statute, classification of teachers for salary purposes on the basis of performance evaluation is impermissible.

The majority relies upon *Heinlein* v. *Anaheim Union H. S. Dist.* (1950) 96 Cal.App.2d 19 [214 P.2d 536],[1] and *Kacsur* v. *Board of Trustees, supra,* 18 Cal.2d 586. *Kacsur,* by dicta, and *Heinlein,* by a square holding, upheld school board policy granting salary increments only to teachers whose performance had been rated satisfactory. Those cases, however, were grounded on the *Fry* principle that the pre-1969 version of section 13506 reserved to school boards the discretion to adopt salary policies involving "reasonable" departures from the uniformity principle. As we have seen, *Palos Verdes* holds that revised section 13506 no longer tolerates such "reasonable" deviations. The majority's reliance on *Heinlein* and *Kacsur* is thus misplaced. Neither the briefs by the school district nor the amicus brief by the school employ-

---

[1]Ironically, the author of this dissent has more than a nodding acquaintance with *Heinlein* v. *Anaheim Union H. S. Dist., supra,* 96 Cal.App.2d 19.

er's association in support of the school district even mention, much less rely upon, *Heinlein* or *Kacsur* to support their position. The studied avoidance of those cases by able counsel for the district and amicus is not without significance.

The majority argues that the principle enunciated in *Kacsur* and *Heinlein* must still be viable because otherwise *Palos Verdes* would have overruled or disapproved those cases as it had done with respect to *Lompoc Federation of Teachers* v. *Lompoc Unified Sch. Dist.* (1976) 58 Cal.App.3d 701 [130 Cal.Rptr. 70], and *California Sch. Employees Assn.* v. *Coachella Valley Unified Sch. Dist.* (1977) 65 Cal.App.3d 913 [135 Cal.Rptr. 630]. The simple answer is that it would have been inappropriate to "overrule" or "disapprove" *Kacsur* and *Heinlein* because those cases had been correctly decided under the former version of section 13506. *Lompoc* and *Coachella Valley* were disapproved to the extent they were inconsistent with *Palos Verdes* because they involved the interpretation of section 13506 in its current form.

Despite the conclusive language of *Palos Verdes* on the effect to be given amended section 13506, the majority purports to derive support for its position from two footnotes in that case. First the majority relies upon language in footnote 6 at page 661 of the *Palos Verdes* opinion. The footnote appears under a discussion in the text concerning credit for outside experience and reads in part: "By the same token, we do not read the new statute to preclude a district from making reasonable determinations as to the level and quality of 'training' or 'experience' which is to qualify for a particular level of credit within its boundaries. Once a district has made such determinations, however, the new statute requires that the resultant standards be applied uniformly to all teachers in the district." (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist., supra*, 21 Cal.3d 650, 661.)

The majority seizes upon the word "quality" in footnote 6 and reasons that the Supreme Court meant that a school board retains the discretion to set the "quality of performance" which will be required as a condition of credit for a year of teaching experience. This is a strained, unwarranted interpretation of the phrase "the level and quality of 'training' or 'experience.'" In the context of the statute, the text of the opinion to which the footnote relates, and the footnote, the term "years of experience" means length of teaching service. Thus "quality of experience" can only logically mean the type of teaching experience which will be credited; e.g., teacher corps service, night school teaching,

private school teaching, etc. The phrase had no reference to the "quality" of an individual teacher's performance during a year of service. The majority is attempting to use footnote 6 to resurrect the "reasonable" variation principle which the *Palos Verdes* court laid to rest in the body of its opinion.

The majority also relies upon references in the *Palos Verdes* opinion to the legislative declaration in section 3 of the 1969 Statutes amending section 13506. The declaration reads: "'It is the intent of the Legislature in amending Section 13506 of the Education Code as provided in Section 1 of this act to establish a *uniform base salary schedule* in each school district. It is not the intent of the Legislature in this act to limit a school district governing board in developing *pay incentive programs.*'" (Original italics; *id.*, at p. 658.) The *Palos Verdes* opinion mentions the legislative declaration in two places: At page 658, it is simply quoted without comment. In footnote 5, at page 660, the court refers to the statement in the legislative declaration that it was not the intent of the Legislature "to limit a school district governing board in developing *pay incentive programs,*" and adds: "The meaning of this language is clear in light of the *San Diego Federation of Teachers* [216 Cal.App.2d 758 (31 Cal.Rptr. 146)] case, discussed in footnote 3, *ante.* The fact that a district, in order to improve the level of academic attainment of its staff, chooses to do so by setting up special salary categories for those undertaking advanced training can in no way be said to conflict with the principle of uniform classification according to 'years of training and years of experience.' By the same token no conflict would occur should a district decide to subclassify its top 'experience' classification in order to encourage the retention or recruitment of extremely experienced teachers." I find nothing in the quoted language suggesting that the court was of the view that "pay incentive programs" encompassed salary classification plans based upon teachers' performance ratings.

For the foregoing reasons, I would hold that the provision in the collective bargaining agreement making entitlement to salary increments subject to "satisfactory performance evaluation" violates former section 13506 (now § 45028). As an abstract proposition, the notion that school boards ought to have the power to require "satisfactory" performance as a condition of entitlement to salary increments is appealing. Realistically, however, since performance evaluations involve so many subjective

elements, there is an inherent risk that prejudice, favoritism, or other improper considerations may enter into such ratings.[2] Whether school boards should have the power and discretion to fix salaries in accordance with quality of performance is a matter for the Legislature. The Legislature has made that policy decision by providing that salary classification shall be based entirely and strictly on training and experience. It should be added that this does not leave school districts powerless to deal with teachers who may be incompetent or inefficient, who persistently refuse to obey reasonable school district regulations or who are otherwise unfit for service. Such conduct constitutes grounds for dismissal. (§§ 44932, 44938, 44939.[3])

The question remains whether plaintiffs (teachers) are precluded from attacking the contract provision in question because it is part of a collective bargaining agreement. The district urges that plaintiffs' rights under section 45028 have been waived by their bargaining representative. I disagree.

The uniformity requirement of section 45028 assures individual teachers a right which is as important and fundamental as tenure. A right so basic to an individual teacher should not depend on the relative bargaining strength of the school district and the teacher's bargaining representatives unless the Legislature expressly so provides. The Legis-

---

[2]In *Kacsur v. Board of Trustees, supra*, 18 Cal.2d 586, the school superintendent attempted to support a salary reduction on the basis of some vague statements concerning inefficiency and differences in teaching philosophy. The Supreme Court held such evidence was insufficient to support the trial court's finding that the school board did not act arbitrarily or unreasonably in fixing the salary.

[3]Where the charge is unprofessional conduct or incompetency, action may not be taken unless the teacher has been given notice and opportunity to correct his or her faults and overcome the ground for the charge. Section 44938 provides: "The governing board of any school district shall not act upon any charges of unprofessional conduct or incompetency unless during the preceding term or half school year prior to the date of the filing of the charge, and at least 90 days prior to the date of the filing, the board or its authorized representative has given the employee against whom the charge is filed, written notice of the unprofessional conduct or incompetency, specifying the nature thereof with such specific instances of behavior and with such particularity as to furnish the employee an opportunity to correct his faults and overcome the grounds for such charge. The written notice shall include the evaluation made pursuant to Article 11 (commencing with Section 44660) of Chapter 3 of this part, if applicable to the employee. 'Unprofessional conduct' and 'incompetency' as used in this section means, and refers only to, the unprofessional conduct and incompetency particularly specified as a cause for dismissal in Sections 44932 and 44933 and does not include any other cause for dismissal specified in Section 44932."

lature has done precisely the opposite. In my opinion, section 44924[4] renders invalid an employee's attempted waiver of the benefits of the uniformity requirement of section 45028 either through an individual agreement or by collective bargaining. Government Code section 3540.1, subdivision (h),[5] cited by the school district, does not validate a contractual provision which is violative of an express provision of law.

For the foregoing reasons, I would affirm the judgment.

Respondents' petition for a hearing by the Supreme Court was denied September 24, 1980. Bird, C. J., was of the opinion that the petition should be granted.

---

[4]Education Code section 44924 provides in pertinent part: "Except as provided in Sections 44937 and 44956, any contract or agreement, express or implied, made by any employee to waive the benefits of this chapter or any part thereof is null and void."

[5]Subdivision (h) of Government Code section 3540.1 provides: "(h) 'Meeting and negotiating' means meeting, conferring, negotiating, and discussing by the exclusive representative and the public school employer in a good faith effort to reach agreement on matters within the scope of representation and the execution, if requested by either party, of a written document incorporating any agreements reached, which document shall, when accepted by the exclusive representative and the public school employer, become binding upon both parties and, notwithstanding Section 3543.7, shall not be subject to subdivision 2 of Section 1667 of the Civil Code. The agreement may be for a period of not to exceed three years."

Subdivision 2 of Civil Code section 1667 provides: "That is not lawful which is:

". . . . . . . . . . . . . . . . . .

"2. Contrary to the policy of express law, though not expressly prohibited;. . ."